[No. 21040-8-I. Division One. June 26, 1989.]

THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*, v. BOB MARR, ET AL, *Appellants*.

---

*Ronald C. Hardesty* and *Carpenter, Walker & Hardesty,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Robert K. Costello, Assistant,* for respondent.

PEKELIS, J.—Bob Marr appeals from an order of the Superior Court granting summary judgment to the Department of Natural Resources in its action to enjoin Marr from violating the Forest Practices Act of 1974. Marr argues that his logging activities did not take place on "forest land" and were thus not subject to the act. He also argues that the stop work order upon which the Department based its action for an injunction is unenforceable because it did not correctly describe the property subject to the order. We affirm.

I

The relevant facts in this case are not in dispute. At issue is the scope of the Forest Practices Act of 1974 (FPA) and the correct interpretation of certain provisions of the act.

Bob Marr obtained a permit from the Department of Natural Resources (DNR) to log a 20–acre parcel of land, and at the same time obtained a permit to log a contiguous residential lot. With the permission of the landowners but without complying with the notification and application provisions of the FPA, Marr also commenced logging operations on nine nearby residential lots. These lots had been zoned residential for over 40 years and varied in size from one–tenth of an acre to 1¾ acres.

In response to a citizen complaint, Bernard Strachila, a DNR official responsible for enforcing the FPA, inspected the site of Marr's logging activities on January 9, 1987. During the inspection, Strachila discovered that Marr was logging areas for which he did not have a permit. Strachila issued and personally served a stop work order directing Marr to cease the unauthorized logging activities until he obtained an approved application or notification as required by the FPA. However, in the order, Strachila

made an error in the legal description of the property subject to the stop work order. The order read "SE 1/4 NW 1/4" instead of "SE 1/4, NE 1/4".

Strachila returned to the site on January 14, 1987, and saw that Marr had failed to comply with the stop work order. DNR then filed an action against Marr to enforce the order, obtaining a temporary restraining order on January 27, 1987, and a preliminary injunction on February 6, 1987. In its order granting preliminary injunction, the Superior Court found that Marr understood the stop work order to prohibit further logging on the residential lots.

Subsequently, both parties moved for summary judgment on the issue of whether the residential lots logged by Marr were "forest land" subject to the provisions of the FPA. The Superior Court concluded that the lots were forest land and permanently enjoined Marr from logging the lots until he complied with the FPA.

## II

Marr first contends that residential lots are not "forest land" subject to the provisions of the FPA. He argues that the Legislature intended the FPA to apply only to the commercial timber industry. DNR contends that the statutory definition of "forest land" is comprehensive and that the property logged by Marr falls within the definition.

In interpreting a statute, it is the court's duty to ascertain and give effect to the intent and purpose of the legislation as expressed in the act as a whole. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). Where an administrative agency charged with administering a special field of law is endowed with quasi–judicial functions because of its expertise, the agency's construction of the statute should be accorded substantial weight. *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981). However, the agency's interpretation is not conclusive. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 391, 687 P.2d 195 (1984). It is ultimately

for the court to determine the purpose and meaning of the statute. *Overton,* 96 Wn.2d at 555.

The paramount concern in interpreting a statute is to ensure that the interpretation is consistent with the underlying policy of the statute. *Meyering,* 102 Wn.2d at 392. The language of the statute is the court's primary guide in ascertaining its purpose. *Condit,* 101 Wn.2d at 110.

The FPA regulates forest practices on public and private forest lands. The legislative findings which describe the purpose of the FPA show that the Legislature's intent in enacting the FPA was to foster the commercial timber industry while protecting the environment. RCW 76.09.010. Consistent with the underlying policy of protecting the environment, the Legislature gave the FPA broad application by broadly defining forest land:

> "Forest land" shall mean all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing.

RCW 76.09.020(6).

The parties agree that this definition of forest land incorporates a 2–part test. Marr first contends that the residential lots logged by him were not forest land because they did not contain "merchantable stands of timber."

The Forest Practices Board, acting pursuant to authority granted by the FPA, has defined "merchantable stand of timber" as follows:

> **"Merchantable stand of timber"** means a stand of trees that will yield logs and/or fiber:
> (a) Suitable in size and quality for the production of lumber, plywood, pulp or other forest products.
> (b) Of sufficient value at least to cover all the costs of harvest and transportation to available markets.

Former WAC 222–16–010(27). It is conceded by Marr that the sale of the logs removed from the lots realized more than it cost to remove and transport the logs to market. It may therefore be inferred that they were also suitable in size and quality for the production of forest products, and

thus, constituted "merchantable stands of timber" satisfying the first part of the definition of "forest land".

Marr contends that the second part of the definition is not met because no active commercial timber growing was taking place on the lots. In making this contention, Marr reads an "active timber growing" requirement into the definition. However, there is no requirement that landowners be actively engaged in cultivating timber; the statute provides simply that land is forest land if it *is not being actively used for a use which is incompatible with timber growing.*" (Italics ours.) RCW 76.09.010(6). As DNR points out, the fact that Marr realized a profit on the timber he logged would appear to conclusively show that the lots were not being put to a use incompatible with timber growing.

Marr does not directly address the logic of DNR's contention, but rather argues that designating residential lots as forest land would have the absurd result of requiring private landowners who want to cut down a few trees on their property to obtain a permit and to either reforest or state their intention to convert the property to another use. However, as DNR points out, that would not be the result under the FPA.

The FPA establishes four classes of forest practices. RCW 76.09.050; WAC 222–12–030; WAC 222–16–050. Class 2 forest practices may commence after written notification to DNR, and classes 3 and 4 require application and approval. RCW 76.09.050(1). Class 1 forest practices do not require either application or notification and include removal of less than 5,000 board feet of timber. RCW 76.09.050(1); WAC 222–16–050(3)(k). Thus, landowners who want to cut down a few trees on their property are not required to obtain a permit.

Similarly, cutting down a few trees would not necessarily require owners of forest land to reforest or to state their intention to convert their property to another use. Forest land is converted to a use other than commercial timber production only when it is converted to an active use which

is incompatible with timber growing. RCW 76.09.020(4). Cutting down a few trees would not convert the land to another use and thus would not require landowners to submit an application stating their intention to convert to another use. *See* RCW 76.09.060(3). Moreover, reforestation is required in instances of partial cutting only

> where 50 percent or more of the timber volume is removed within any 5-year period, unless the department determines that the live trees remaining will reasonably utilize the timber growing capacity of the soils.

WAC 222-34-010(1)(a)(ii); *see also* RCW 76.09.070.

In addition, if we were to accept Marr's contention that the lots involved in this case are not forest land, it would effectively exclude all forest practices on residential lots from the coverage of the FPA. The fact that Marr removed over 326,000 board feet of timber from these lots illustrates the impact of such an exclusion. DNR would lose the ability to monitor the removal of a significant amount of timber, thereby losing the ability to effectively monitor the impact of logging on the environment.

The Legislature's broad definition of "forest land" in RCW 76.09.020(6) makes clear that it intended to bring logging activities such as Marr's within the purview of the FPA. The Superior Court correctly concluded that the residential lots logged by Marr are forest land subject to the requirements of the FPA.

### III

Marr also contends that DNR's action to enforce its stop work order must fail because the property was incorrectly described in the order.

Marr's contention is based on the argument that the FPA provisions governing stop work orders must be strictly construed because the FPA is penal in nature. He reasons that when strictly construed, the FPA requires stop work orders to accurately identify the area upon which work must be stopped. Marr essentially argues that the error in the stop work order resulted in inadequate notice to him.

A statute is penal in nature when a violation of its provisions can be punished by imprisonment and/or a fine. *State v. Von Thiele*, 47 Wn. App. 558, 562, 736 P.2d 297, *review denied*, 108 Wn.2d 1029 (1987). Penal statutes must be literally and strictly construed. *State v. Bird*, 95 Wn.2d 83, 86, 622 P.2d 1262 (1980). A statute is remedial when it provides for the remission of penalties and affords a remedy for the enforcement of rights and redress of injuries. *Von Thiele*, 47 Wn. App. at 562.

RCW 76.09.170 provides that a person who violates the FPA is subject to a penalty of not more than $500 for each violation. Every day's continuance of noncompliance with a stop work order is a separate and distinct violation. DNR may remit penalties incurred under this statute. Thus, the statute appears to be remedial in nature. *See Von Thiele*, 47 Wn. App. at 562. Marr points out that RCW 76.09.190 provides that a person who violates the FPA is guilty of a gross misdemeanor punishable by a fine and/or imprisonment. He thus contends that the entire FPA is penal.

However, the Legislature may provide for both civil and criminal penalties in the same act without converting a civil penalty scheme into a criminal or penal proceeding. *Von Thiele*, 47 Wn. App. at 561. Thus, the fact that RCW 76.09.190 provides for criminal penalties does not in itself convert the remainder of the FPA into a penal statute.

DNR's action against Marr is a civil proceeding to enjoin him from violating the FPA, not a criminal proceeding. *See Von Thiele*, 47 Wn. App. at 561. For this reason, we refuse to strictly construe the stop work order provision here and simply analyze whether the order provided adequate notice.

In civil cases, the purpose of notice statutes is to fairly and sufficiently apprise those who may be affected of the nature and character of an action, and notice is deemed adequate in the absence of a showing that anyone was actually misled by the notice. *Nisqually Delta Ass'n v. DuPont*, 103 Wn.2d 720, 727, 696 P.2d 1222 (1985). Although Marr assigns error to the Superior Court's finding that he understood the stop work order to prohibit further

logging on the residential lots, he cannot dispute that he knew what area was covered by the order. It is undisputed that when Strachila inspected Marr's logging operations, he clearly informed Marr that he must cease logging the lots until he obtained a permit. Thus, Marr received actual notice, if not the written notice required by RCW 76.09.080.

In light of the fact that Marr was not misled by the stop work order, and in light of the fact that the present action is not a criminal proceeding but simply an action to enjoin Marr from continuing his logging operations until he complies with the FPA, the stop work order is enforceable despite the error in the legal description. We thus affirm the Superior Court's order enjoining Marr from continuing his logging activities until he complies with the FPA.

SCHOLFIELD and WINSOR, JJ., concur.