[No. 26702-7-I. Division One. October 7, 1991.]

THE PORT OF EDMONDS, *Respondent*, v. NORTHWEST FUR BREEDERS COOPERATIVE, INC., *Appellant*.

*Richard W. Pierson* and *Foulds, Felker, Pierson & Ryder, Inc., P.S.; John Rogers Marts* and *Williams & Thomas, Inc.*, for appellant.

*Peter L. Maier* and *Armstrong, Alsdorf, Bradbury & Maier, P.C.*, for respondent.

KENNEDY, J. — Appellant Northwest Fur Breeders Cooperative, Inc. (the Coop) appeals the trial court's determination of public use and necessity in this condemnation action taken by respondent Port of Edmonds (the Port). Because we find that the Port commissioners' vote to condemn the Coop's land was taken in violation of statutory law, we reverse the judgment below.

I

The Coop is an animal food products processor and distributor whose principal plant of operation is located on a

site upland from the Edmonds waterfront. The ¾-acre site is completely surrounded by land owned by the Port. The Coop used to own more land in the area but the Port acquired 3½ acres of tidelands from the Coop in the early 1950's. There is evidence in the record that odor has been a problem around the Coop and that there have been complaints about odor directed to the Port. Before the condemnation action at issue in this case was initiated, the Coop purchased land in another area of Snohomish County and applied for permits to move its operation there. The Coop then proceeded to formulate plans to redevelop the Edmonds parcel for "living units and retail shops".

The Port operates a public boat harbor for both permanent and transient moorage, a public boat launcher, a fuel dock, a boat storage operation and a business park. The small boat launcher, which is operated by the Port adjacent to the Coop facility, launched roughly 10,000 boats in the 1987-88 season, and approximately 13,000 in 1988-89.

The Port had identified the Coop parcel as possibly needing to be acquired as early as 1979 and again in 1987. The present condemnation action began on December 11, 1989, when Port manager William Stevens wrote a memorandum to the Port commissioners regarding possible Port improvements which were to be discussed and addressed at a Harbor Improvement Plan meeting that evening. This memorandum recommended the acquisition of the Coop property because of the need for the land for parking by users of the small boat launch operation and because the Coop was considered an inappropriate land use in the area. This memorandum also served as an agenda for the Port commissioners' December 11 meeting.

Prior to this meeting, the Port published the following notice in The Herald:[1]

---

[1] The Herald is a daily newspaper published in Everett and circulated throughout Snohomish County.

PORT OF EDMONDS
Notice of Hearing

The Port Commission of the Port of Edmonds will conduct a hearing pursuant to RCW 53.20.010 and 53.20.020 to determine if a supplemental Comprehensive Scheme of Harbor Improvements should be adopted to supplement and be in addition to the Comprehensive Scheme of Harbor Improvements as supplemented. The hearing will be held on Monday, December 11, 1989, at 7:30 p.m. at the Port Commission meeting room, Port Administration Building, 336 Admiral, Edmonds, Washington.

DATED this 13th day of November, 1989.

PORT COMMISSION OF THE PORT OF EDMONDS
By: WILLIAM B. STEVENS
Port Manager
Published: November 24; December 1, 1989

None of the information outlined in the Port manager's December 11 memorandum was contained in the notice. Nor was the Coop contacted about the meeting by anyone associated with the Port.

At the meeting on December 11, 1989, the Port commissioners considered and approved the Port manager's December 11 memorandum. On January 8, 1990, the commissioners formally adopted resolution 1002 which purported to supplement the comprehensive scheme of harbor improvements to acquire the Coop parcel, by condemnation if necessary. On the same date, the commissioners also adopted resolution 1003 authorizing an offer to purchase the property for $615,000 and instructing the Port's attorneys to commence condemnation in the event a purchase could not be negotiated.

On March 30, 1990, the Port filed a petition for exercise of eminent domain. The hearing was held on July 18-19, and August 2, 1990. At the hearing, one of the Port commissioners testified that there had been extensive problems with parking in the area of the small boat launch for several years and that the problems were anticipated to worsen.

Although the Port apparently had enough parking in adequate total numbers at the time of the condemnation action,

testimony indicated that there was a particular problem with parking for launchers of small boats, as such parking was not near the launcher. Though various additional parking areas were acquired just prior to the condemnation of the Coop's land, there is also testimony in the record that this property only provided transient parking relief and did not meet the long-term needs of the Port with respect to boat trailer parking. There was also testimony at the hearing concerning traffic congestion caused by the Coop's operation, but a traffic study was not performed.

The Coop contended that the parking was not really necessary and also challenged the condemnation action at the hearing by claiming that the legislative decision to condemn the land was made in bad faith and without due process of law. Additionally, the Coop claimed that the action was in violation of statutory law regarding notice, but the Coop never cited a specific statute to the trial court, even though challenged to do so by the Port's attorney.

The trial court entered an order of public use and necessity on August 8, 1990. In pertinent part the order states that the property

> is for the construction of additional parking facilities, elimination of traffic congestion, [and] provision of more efficient use of the Port's small boat harbor and public boat launcher . . ..

This appeal followed.

## II

Appellant contends that the judgment of the trial court must be overturned because the Port's authorization of the condemnation was taken at a hearing held without the proper statutory notice procedures applicable to port districts in the exercise of eminent domain. Specifically, the Coop contends that RCW 53.08.010, which authorizes eminent domain by port districts, declares that such actions shall be exercised in the same manner as cities of the first class, that cities of the first class are required by RCW 35.22.288 to publish meaningful notices of any upcoming meetings which consider eminent domain actions and that

the Port failed to publish a meaningful agenda of the meeting with its notice, thereby invalidating its decision to condemn the Coop property taken at that meeting. Respondent counters that the Coop cannot raise compliance with RCW 35.22.288 at this stage because that statute was not raised below, that even if it were to be considered, it is inapplicable, and that the Port's actions were in compliance with the statute in any event.

As a general rule, an appellate court will not consider an argument raised for the first time on appeal. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); *Olson v. Siverling*, 52 Wn. App. 221, 230, 758 P.2d 991 (1988), *review denied*, 111 Wn.2d 1033 (1989). This is to encourage the presentation of all arguments before the trial court, which can consider all issues together and thereby conserve judicial resources. The Port correctly points out that in the present case, the trial judge had no opportunity to consider whether the Port complied with RCW 35.22.288 because this statute was not specifically raised below. Had it been considered and found to be applicable, the Port would have had an opportunity to correct its notice in a more timely manner.

■ If the only interest at stake in this case were that of the Coop, we would be inclined not to consider appellant's argument for the reason cited above. However, other parties besides the Coop have an interest in whether the need for trailer parking spaces outweighs the need for the retail shops and condominiums that the Coop desired to build on the land. Because the Legislature has expressed its desire that the public always have a right to participate in the legislative process (*see, e.g.*, RCW 42.30.010) and because of the broad public interest in what becomes of the land at issue, this court will exercise its discretion to reach the issue of statutory notice. *See Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision."); *see*

*also Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990) (citing *Obert v. Environmental Research & Dev. Corp.*, 112 Wn.2d 323, 333, 771 P.2d 340 (1989)). In doing so, we emphasize that the trial judge is not to be faulted for failing to consider the applicability of a statute which was not even cited by appellant, and the applicability of which is an issue of first impression.[2]

Respondent Port argues that the statute is not applicable, or, in the alternative, that the Port's notice was not violative of its requirements. RCW 35.22.288 states in pertinent part that:

> every city [of the first class] shall establish a procedure for notifying the public of upcoming hearings *and the preliminary agenda* for the forthcoming council meeting. Such procedure may include, but not be limited to, written notification to the city's official newspaper, publication of a notice in the official newspaper, posting of upcoming council meeting agendas, or such other processes as the city determines will satisfy the intent of this requirement.

(Italics ours.) The Coop argues that this statute is applicable to Port districts by virtue of RCW 53.08.010, which states that a port district's purchases or condemnations of land shall be exercised in the same manner and procedure as governs cities of the first class. RCW 35.22.288 is a relatively new statute,[3] and its applicability to port district eminent domain has not been addressed before. An examination of the relevant statutory scheme convinces us that the Coop's argument is correct.

RCW 53.08.010 empowers port districts to acquire land by eminent domain and in doing so requires them to follow the procedure that is applicable to cities of the first class. RCW 8.12 governs the exercise of eminent domain for cities of *all* classes and, as admitted by respondent, is clearly referenced by RCW 53.08.010. RCW 8.12 states that

---

[2]At oral argument for this appeal, appellant's counsel candidly conceded that his failure to specifically raise RCW 35.22.288 in the proceedings below was because of his own initial lack of understanding of the statutory scheme.

[3]This section was by amended in 1988.

eminent domain shall be exercised by ordinance (which is the equivalent of resolutions passed by the port district). RCW 35.22.288, which specifically governs the adoption of ordinances by cities of the first class, states that when an ordinance is passed, prior notice containing the preliminary meeting agenda must be given.

Respondent claims that such notice is not applicable in the present case because the connection between RCW 35.22.288 and RCW 53.08.010 is too tenuous. We disagree. RCW 35.22.288 specifically modifies RCW 8.12 in that it specifies how ordinances are to be adopted for cities of the first class, and RCW 8.12 specifically provides that eminent domain shall be exercised by ordinance. If the only statute referenced by RCW 53.08.010 were RCW 8.12, the Legislature need not have specified that port districts were to use the same procedure in eminent domain as cities of the *first* class. Clearly, some meaning must be attached to the specificity of the Legislature in using cities of the first class as a model for port district eminent domain. We hold, therefore, that when making a legislative decision to initiate an eminent domain proceeding, RCW 53.08.010 requires a port district to give prior notice as required by RCW 35.22.288.

■ The Port contends that even if notice were required under RCW 35.22.288, the notice published by the Port in The Herald met the requirement. We disagree. RCW 35.22.288 specifies that there must be a notice of the preliminary meeting agenda. Furthermore, we believe that the statute requires that any such notice adequately "satisfy the intent" of the statute. *See* RCW 35.22.288. The purpose of any meeting notice should be to fairly apprise the reader of actions that will be taken at that meeting. *See Department of Natural Resources v. Marr*, 54 Wn. App. 589, 596, 774 P.2d 1260 (1989) ("In civil cases, the purpose of notice statutes is to fairly and sufficiently apprise those who may be affected of the nature and character of an action") (citing *Nisqually Delta Ass'n v. DuPont*, 103 Wn.2d 720, 727, 696 P.2d 1222 (1985)); by analogy, *see also Glaspey & Sons, Inc.*

*v. Conrad*, 83 Wn.2d 707, 710, 521 P.2d 1173 (1974). Otherwise, the concept of notice would be a meaningless exercise.

In the present case, we find that a reasonable person would not have been fairly apprised by The Herald notice that the actions of the Port Commission would include possible condemnation of the site in question since no mention of the condemnation was made in the notice. Indeed, the record indicates that the first time any official mention was made at all of the condemnation action was on the very day that it was considered by the Port, December 11, 1989, over 2 weeks after notice was first published. Without any mention of the condemnation in its notice, the Port cannot claim substantial compliance with the intent of the notice requirement in RCW 35.22.288.[4] Therefore, the Port did not give the statutory notice which is required to legislatively initiate an action in eminent domain, and the decision below must be reversed.[5]

Although we find that the notice given by the Port did not comply with RCW 35.22.288 in the present case, we reject appellant's contention that due process requires *personal* notice to the condemnee in cases of condemnation. In *Sheep Mt. Cattle Co. v. Department of Ecology*, 45 Wn. App.

---

[4]As pointed out by the Port, the Coop has not cited evidence in the record showing that it was "unaware of either the public hearing or its agenda." See Brief of Appellant, at 7; *see also* RAP 10.3(a)(4) (all factual statements must be supported with proper citation to the record). According to *Marr*, notice "is deemed adequate in the absence of a showing that anyone was actually misled by the notice." *Marr*, 54 Wn. App. at 596. Without evidence before it showing that the Coop was not adequately apprised or misled, respondent argues that this court cannot find the notice to be inadequate even if it were to determine that RCW 35.22.288 were applicable to the Port.

The facts of *Marr* are distinct from those in the present case, however. In *Marr*, there is evidence that the complaining party had actual notice even though constructive notice was inadequate. There is no evidence of actual notice in the present case. Therefore, adequate notice cannot be imputed under *Marr* because of the lack of evidence of actual notice.

[5]We do not hold that notice of the preliminary agenda for meetings at which condemnation will be considered must necessarily be published in a newspaper. Rather RCW 35.22.288 requires the Port to establish a procedure for notifying the public of the preliminary agenda. There may be effective methods of providing the required notice other than publication.

427, 726 P.2d 55 (1986), *review denied*, 107 Wn.2d 1036 (1987), the Department of Ecology issued a determination that certain water rights in Sheep Mountain's name had reverted to the State. This determination was made without giving notice or an opportunity to be heard to Sheep Mountain. The Court of Appeals reversed the water rights reversion, finding that appellant's property interest in the water was taken without due process of law because it was determined to be forfeit in a final decision made without benefit of a hearing. *Sheep Mountain*, at 430-31. Similarly, in *Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 721, 684 P.2d 1275 (1984), the Supreme Court overturned a foreclosure of property for payment of back taxes as violative of due process rights because the foreclosure occurred without personal notice or a hearing.

▪ Contrary to appellant's contentions, however, these cases do not support the proposition that personal notice is required in the instant case to satisfy the Coop's due process rights. Both *Sheep Mountain* and *Mustell* stand for the proposition that personal notice (and hearing) are required before a final taking of a property can occur. Such personal notice and hearing before a final taking occurred in the present case, in the judicial hearing on public use and necessity, since the eminent domain decision by the Port is not final or complete until the Port petitions and has such a hearing. *See Everett v. Weborg*, 39 Wn. App. 10, 15, 691 P.2d 242 (1984).

Furthermore, the case of *In re Puget Sound Power & Light Co.*, 28 Wn. App. 615, 625 P.2d 723, *review denied*, 95 Wn.2d 1026 (1981), cited by appellant, does not compel a different result. The court in *In re Puget Sound* held that a less deferential judicial standard of review should apply to the review of a private entity's condemnation action, and the appellant construes this as requiring personal notice at the legislative stage, when the judicial standard of review is more deferential. We disagree. Personal notice is not required at the legislative decision stage simply because the review of the trial court in the hearing of public use and

necessity is limited. That the trial court's standard of review of an agency's legislative decision is limited or deferential does not mean that the decision of the legislative body is a "final" taking which requires personal notice under the holding of *Sheep Mountain*. The judicial hearing is an integral part of a Port's condemnation action, even though its role does not include a de novo review of the Port's decision. Moreover, in the present case, the Port is a legislative body, which is required to give meaningful notice of its meetings to the public, open its meetings to the public and make its decisions through elected representatives. The Puget Sound Power and Light Company is not such a body.

We believe that the meaningful notice required under RCW 35.22.288 will give ample opportunity for involvement in the legislative process without requiring personal notice to condemnees before the judicial hearing stage. Therefore, we hold that due process did not require personal notice of the Port's meeting in the present case. *See; e.g., In re Puget Sound Power & Light Co.*, 28 Wn. App. 615; *King Cy. v. Olson*, 7 Wn. App. 614, 618-19, 501 P.2d 188 (1972). Neither does the federal constitution require such notice. *Joiner v. Dallas*, 380 F. Supp. 754, 769 (N.D. Tex.), *aff'd*, 419 U.S. 1042, 42 L. Ed. 2d 637, 95 S. Ct. 614 (1974), *reh'g denied*, 419 U.S. 1132, 42 L. Ed. 2d 831, 95 S. Ct. 818 (1975).

Because the Port gave inadequate notice, it must begin the eminent domain process anew. We reverse the judgment of public use and necessity and remand for disposition in compliance with this opinion.[6]

SCHOLFIELD and AGID, JJ., concur.

Reconsideration denied November 6, 1991.

Review denied at 118 Wn.2d 1021 (1992).

---

[6]Because of our determination regarding the Port's failure to comply with RCW 35.22.288, we do not reach appellant's contention that the action of the Port must be overturned as arbitrary and capricious.