143 P.3d 891 (2006)
YAKIMA COUNTY, a political subdivision of the State of Washington, Respondent,
v.
William G. and Jeannette M. Evans, husband and wife; Evans Rattlesnake Ranch, Inc. a Washington corporation; Rattlesnake Orchards, a limited partnership, Appellants,
Barbara Chaffee Severyn, (also known as Barbara Fette); Sunnyside Ranch Company, Inc., a Washington corporation; Interstate Production Credit Association, a corporation organized under the law of the United States; the Sunnyside Company, a partnership; Michael B. Ilg, d/b/a Investors Lending Group; Pacificorp, d/b/a Pacific Power and Light Company, a Washington corporation; Roza Irrigation District, a Municipal corporation; Ilene Thompson, Yakima County Treasurer, as tax assessment collection agent for Yakima County, Weed Control District and Soil Conservation District, Respondents.
No. 24199-8-III.
Court of Appeals of Washington, Division 3.
October 5, 2006.
*892 John S. Moore, Jr., Velikanje Moore & Shore, PS, Yakima, WA, for Appellants.
Kenneth W. Harper, Menke Jackson Beyer Elofson Ehli, Yakima, WA, for Respondents.
KULIK, J.
¶ 1 This is an eminent domain case. William and Jeannette Evans (the Evanses) own property in Yakima County. In 1999, the Board of Yakima County Commissioners (County) authorized improvements to Chaffee Road that impacted the Evanses' property. The County mailed notice of a public meeting to the Evanses, and held the meeting on the planned improvements. In 2003, the County expanded the project and changed two intersections from "T" intersections to "S" curves. The Yakima County Planning Department issued a Final Mitigated Determination of Non-Significance on the initial project. In 2004, the County commenced condemnation proceedings. The Evanses challenge the trial court's finding of public use and reasonable necessity and allege other errors. We agree with the trial court and conclude that the taking of the land was of public use and necessity and not arbitrary and capricious. We affirm.

FACTS
¶ 2 William and Jeannette Evans are the sole owners of Evans Rattlesnake Ranch, Inc., and Rattlesnake Orchards, a limited partnership. When the Evanses purchased the orchard properties in 1978, Chaffee Road was a gravel road entering Section 35 from the west where Chaffee intersected with Maple Grove Road and Scoon Road. Maple Grove Road and Scoon Road lead eventually to the City of Sunnyside. At that time, all of the Chaffee intersections were T-intersections or right angle turns.
¶ 3 In March 1999, the Board of Yakima County Commissioners authorized the improvements to Chaffee Road from Maple Grove Road to Scoon Road from a gravel roadway to a 30 foot paved roadway. On August 12, 1999, the County mailed notice to Rattlesnake Orchards that a public hearing about the widening of Chaffee Road would be held on August 25. Public meetings were held each year after 1999. These 14 meetings addressed the County's six year transportation improvement program in open public business meetings, preceded by public notice. However, no personal notice was sent to property owners until the April 2005 hearing.
¶ 4 On May 1, 2003, Mr. William Maggard sent a letter to Evans Rattlesnake Ranch and Rattlesnake Orchards about a proposal to move several legs of Chaffee Road, and to change the Chaffee intersection at Ritchie Road and at Scoon Road from a "T" to a curve. The project now expanded to include a part of Scoon Road. On May 19, 2003, the Planning Department issued a Final Mitigated Determination of Non-Significance covering the project. It is unclear whether the Planning Department was aware of the proposed plan to expand the project.
*893 ¶ 5 In October 2003, the County disclosed that an additional five feet would be taken on the north side of one leg of the project. The County wrote letters to the Evanses offering payment in exchange for the proposed property taking.
¶ 6 In November 2003, the county commissioners adopted a resolution to improve Scoon Road from Williamson to Chaffee and to acquire lands in sections 35 and 36. In February 2004, the commissioners adopted a resolution to include a portion of Section 35 that was leased to the Evanses. Sale negotiations failed between the County and the Evanses. On March 16, 2004, the commissioners adopted a resolution authorizing condemnation proceedings. The original petition for condemnation was filed November 22, 2004. The County personally served the Evanses with the petition pursuant to RCW 8.08.030.
¶ 7 At the three day condemnation hearing, Gary Ekstedt, Yakima County engineer, testified about the Chaffee Road design. Mr. Ekstedt is an engineer with special expertise in the design and construction of public roads and bridges. He explained the purpose and benefits of widening and paving the roads involved in this project. Mr. Ekstedt's goal was to make certain that the primary roads were developed sufficiently to support the local agricultural economy with a minimum expenditure of funds while avoiding hazardous conditions. Mr. Ekstedt pointed out that gravel roads require frequent dust abatement measures, and are costly and difficult to maintain.
¶ 8 Mr. Ekstedt testified that the improved road required a 60-foot wide right-of-way for most of its length, and a 65-foot width for a small portion. Mr. Ekstedt also explained that the minimum amount of land was taken to accommodate for the "S" curves and the designated speed. The Evanses offered no expert engineering testimony to contradict the evidence presented by Mr. Ekstedt.
¶ 9 The court concluded that the taking of this land was for a public use and necessity. The Evanses appeal. On appeal, the Evanses contend: (1) due process required that property owners receive personal notice of any hearing on the expanded project; (2) the County did not follow local regulations; (3) the County did not consider the overriding public interest in the protection of agricultural land and the environmental impact of the expanded project; and (4) the trial court violated CR 52(c) by failing to provide notice to the Evanses prior to entering its findings of fact and conclusions of law.

ANALYSIS
¶ 10 This court reviews findings of fact for substantial evidence. State v. Halstien, 122 Wash.2d 109, 128, 857 P.2d 270 (1993). Questions of law are reviewed de novo. Ino Ino, Inc. v. Bellevue, 132 Wash.2d 103, 114, 937 P.2d 154 (1997).

1. Did the court err by concluding that the County's actions were not arbitrary and capricious?

Public use and necessity
¶ 11 The Evanses raise numerous issues to suggest that the County's actions were arbitrary and capricious. Although an inherent power of sovereignty, the power of eminent domain must be exercised in a lawful manner. Miller v. Tacoma, 61 Wash.2d 374, 382-83, 378 P.2d 464 (1963). Once the authorized state agency has made a determination that condemnation is necessary, the court must consider the matter as part of a three-step proceeding. The court must determine whether to issue a decree of public use and necessity. There must be a determination of just compensation, and the compensation must be paid and the title transferred. Reg'l Transit Auth. v. Miller, 156 Wash.2d 403, 410, 128 P.3d 588 (2006).
¶ 12 The Evanses challenge the court's determination of public use and necessity. The decision on public use and necessity involves three considerations: first, whether the proposed use is really a "public use"; second, whether the public interest requires the public use; and third, whether the property to be taken is necessary for the proposed purpose. Tacoma v. Welcker, 65 Wash.2d 677, 684, 399 P.2d 330 (1965). The burden of proof is on the condemnor, here the County. State ex rel. Washington State *894 v. Evans, 136 Wash.2d 811, 817, 966 P.2d 1252 (1998).
¶ 13 The Evanses specifically question the third prong, whether the condemnation is necessary. The determination as to whether condemnation is necessary is largely a question reserved for the legislative body seeking condemnation. Welcker, 65 Wash.2d at 684, 399 P.2d 330. "Necessary," in this context means "reasonable necessity, under the circumstances." State ex rel. Lange v. Superior Court, 61 Wash.2d 153, 156, 377 P.2d 425 (1963). We defer to the legislative body when reviewing a challenge to necessity. Miller, 156 Wash.2d at 411-12, 128 P.3d 588. As a result, the legislative body's declaration of necessity is conclusive in the absence of proof of actual fraud or arbitrary and capricious conduct as would constitute constructive fraud. Welcker, 65 Wash.2d at 684, 399 P.2d 330. Here the county commissioners determined that the road modifications were necessary and as minimal as feasible. The Evanses did not prove fraud or capricious conduct. Therefore, we defer to the Yakima County commissioners determination of necessity.

Notice requirements.
¶ 14 The Evanses maintain that a denial of due process is arbitrary and capricious conduct and constitutes an unconstitutional taking. The Evanses contend procedural due process required that the owners receive personal notice of the entire project. Here, no hearing was scheduled with personal notice to all of the owners informing them that the project had been expanded to encompass Chaffee, Ritchie, Scoon, and Williamson roads. However, the County did provide public notice for all of the county commission meetings in which the project was discussed.
¶ 15 "Washington courts have held that personal notice of the public meeting establishing necessity is not required either by the statute or due process." Miller, 156 Wash.2d at 412, 128 P.3d 588, (citing Port of Edmonds v. Nw. Fur Breeders Coop., Inc., 63 Wash.App. 159, 168, 816 P.2d 1268 (1991)). The County was required to give notice of public meetings where the condemnation was discussed. RCW 8.08.030 requires the County to give personal notice only when commencing the three-step condemnation process. Miller, 156 Wash.2d at 412, 128 P.3d 588. The County did so.
¶ 16 The Evanses acknowledge the County personally served them with notice of the condemnation proceeding, and various other notices prior to the condemnation proceeding. However, they argue they should have received personal notice of all of the public meetings leading up to the condemnation proceeding. This argument is unpersuasive. Personal notice of a public meeting establishing necessity is not required. Miller, 156 Wash.2d at 412, 128 P.3d 588.

Legal descriptions.
¶ 17 The Evanses maintain that the second amended condemnation petition contained an erroneous legal description. Apparently, this contention is based on the legal description in the second amended complaint which does not exclude land previously acquired by the County.
¶ 18 The Evanses provide no case law indicating that the legal description is erroneous because it fails to exclude the County's existing road. More importantly, under RCW 8.08.010, the County was required to file a petition setting forth the property sought to be appropriated with "reasonable certainty." The legal description here meets this standard and is sufficiently definite to comply with the statute.

Public interest in protecting agriculture
¶ 19 The Evanses contend the County and the trial court failed to consider RCW 36.70A.177, which encourages counties to use zoning techniques to conserve agricultural lands and promote the agricultural economy. The Evanses also refer this court to Washington's recognition of the overriding public interest in the protection of agricultural lands, uses, activities and operations. RCW 15.04.400. They point out that this policy is also contained in Yakima County Code 15.21.010.
¶ 20 Agricultural considerations were considered as part of this project. Engineer *895 Gary Ekstedt testified that a key focus of the County in improving these roads was to foster the rural agricultural economy of the County.
¶ 21 The Evanses claim the court erred in its findings based on the County's failure to follow its local guidelines and policies. Also, the Evanses contend that the offer letters were insufficient, that the County's plan was ill-conceived and lacked factual evidence to support traffic patterns, and that the totality of the circumstances rise to the level of arbitrary and capricious conduct. The Evanses cite no cases to support these arguments.
¶ 22 The Evanses fail to establish that any of the County's actions constituted arbitrary and capricious conduct.

2. Did the court err by finding that the State Environmental Policy Act (SEPA), Ch. 43.21 RCW was inapplicable?
¶ 23 The Evanses assert that the SEPA checklist and finding of a Final Determination of Non-significant were inadequate and erroneous. Relying on Lassila v. Wenatchee, 89 Wash.2d 804, 576 P.2d 54 (1978), the Evanses contend there is no evidence in the record demonstrating even a limited consideration of all aspects of the project. Specifically, they maintain that the environmental impact of the expanded plan, including the Scurves, was never considered by the County.
¶ 24 This court's review of this issue is limited. This court does not review the environmental issues because questions of public use and necessity are not subject to SEPA. Miller, 156 Wash.2d at 421, 128 P.3d 588. Condemnation proceedings have been effectively removed from SEPA's reach by WAC 197-11-800(5)(a). Consequently, as long as the County considered the environmental impacts here, this court will not substitute its judgment absent a demonstration of fraud, or arbitrary conduct. See Miller, 156 Wash.2d at 421, 128 P.3d 588.
¶ 25 The Evanses assert that the County failed to meet the requirements set forth in Lassila. Lassila concluded that when a governmental body makes a threshold determination of "no significant impact," the governmental body must show that the appropriate environmental factors were considered in a manner sufficient to establish prima facie compliance with the procedural requirements. Lassila, 89 Wash.2d at 814, 576 P.2d 54. However, Lassila was not decided in the context of a eminent domain action, and Lassila was decided before the adoption of WAC 197-11-800(5)(a) and holdings in cases such as Miller and In re Port of Grays Harbor, 30 Wash.App. 855, 638 P.2d 633 (1982).
¶ 26 The Evanses argue that the County's failure to conduct a second environmental review invalidated the Final Determination of Non-significant. The Evanses point out that WAC 197-11-340(3)(a) requires the lead agency to withdraw a determination of nonsignificant if "[t]here are substantial changes to a proposal so that the proposal is likely to have significant adverse environmental impacts." The Evanses assert that the County did not consider the changes to the basic plan which could result in significant environmental impacts.
¶ 27 While the Evanses maintain that the changes to the plan result in significant environmental impacts, they do not argue that the County's decision to forego a second environmental review constituted arbitrary and capricious conduct. And the facts in the record indicate that this argument would fail.
¶ 28 The court properly found that the County did not violate SEPA.

3. Did the court violate CR 52(c) by failing to provide notice to the Evanses prior to entering its findings of fact and conclusions of law?
¶ 29 CR 52(c) reads in part:
Unless an emergency is shown to exist, or a party has failed to appear at a hearing or trial, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions.
¶ 30 The trial court signed and filed findings of fact and conclusions of law without notice to the Evanses. The Evanses contend they were prejudiced by the court's *896 failure to comply with CR 52(c). According to the Evanses, the court's conduct prevented them from evaluating the findings and conclusions and preparing their response. The Evanses assert that by the time counsel received the findings and conclusions they were fixed and served as the basis for the court's order.
¶ 31 To support this argument, the Evanses rely on Tacoma Recycling, Inc. v. Capitol Material Handling Co., 34 Wash.App. 392, 661 P.2d 609 (1983). But Tacoma Recycling is distinguishable because the prevailing party proposed findings and conclusions, and a judgment, without prior notice of presentation to the opposing party. Id. at 394, 661 P.2d 609. In contrast, here the Evanses received notice of the entry of the order of public use and necessity, and their counsel signed the order and waived notice of presentation.
¶ 32 In Seidler v. Hansen, 14 Wash.App. 915, 919-20, 547 P.2d 917 (1976), the court concluded that reversal was not required by one party's failure to comply with CR 52(c) because the other party had suffered no prejudice. Likewise here, the Evanses were allowed to challenge the court's findings and conclusions on appeal. Under CR 52(b):
When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment.
The Evanses can show no prejudice by their failure to receive notice under CR 52(c) of the proposed findings and conclusions.
¶ 33 The trial court concluded that the condemnation was for public use and necessity, and that the County's actions were not arbitrary and capricious. The conclusions are supported by the court's findings of fact. We therefore affirm the trial court.
WE CONCUR: KATO and BROWN, JJ.