IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of M.J.W., | ) ) ) | No. 72310-3-I |
| A Minor Child. | ) ) ) | DIVISION ONE |
| JOHNATHAN L. WALKER, | ) ) | |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| JENNIFER L. JOHNSON, | ) ) ) | |
| Respondent. | ) | FILED: November 9, 2015 |

SCHINDLER, J. — Johnathan L. Walker filed a petition to establish a parenting

plan. Following trial, the court scheduled a presentation hearing and ordered the

attorney for the mother Jennifer L. Johnson to "prepare the final orders and provide a

copy to" Walker. The record establishes Johnson did not provide Walker copies of the

orders before the presentation hearing. Walker appeals, arguing the court erred in

entering the final parenting plan and order of child support where he did not receive

copies of the proposed orders as required by the Civil Rules and the court's order. We

conclude Walker cannot show prejudice as to entry of the final parenting plan but the

record establishes prejudice as to entry of the order of child support. We affirm the final

parenting plan but reverse entry of the order of child support, and remand.

Johnathan Walker and Jennifer Johnson are the parents of M.J.W., born in 2000. Walker and Johnson ended their relationship in 2002. On April 30, 2013, Walker filed a petition to establish a parenting plan. On June 12, the court entered a temporary parenting plan and appointed a guardian ad litem (GAL).

The GAL submitted a report before trial. The GAL recommended that M.J.W. reside with the mother and that she have sole decision-making authority as to major decisions. The GAL recommended M.J.W. should continue individual counseling and Walker and M.J.W. should continue to engage in counseling together. The GAL recommended that after both counselors agreed, Walker's residential time with M.J.W. should begin with a three-hour dinner visit every other week, increase to include an additional four hours every other weekend, and then increase to weekly dinner visits with one weekend day every other weekend.

Trial began on May 5, 2014. The court heard testimony from Walker, his spouse, Johnson, and the GAL.

On June 9, the court issued a three-page letter ruling addressing the parenting plan. The letter ruling closely followed the GAL's recommendations. The letter ruling states, in pertinent part:

> I have reviewed my notes and the exhibits admitted at trial. Based on the exhibits and the testimony of the witnesses presented, I am persuaded as follows:
>
> 1) That [M.J.W.] should reside with the Respondent/Mother;
>
> 2) That it is not in the best interests of [M.J.W.] to have visitation with the Petitioner/Father except through a phased plan similar to that recommended by the Guardian Ad Litem;
>
> 3) That the prior sporadic parenting by Mr. Walker has not been conducive to the emotional well being of [M.J.W.];

4) That until bonds of trust can be established between [M.J.W.] and Mr. Walker, attempts to introduce [M.J.W.] into Petitioner's new family would be detrimental to [the child's] emotional and psychological well being;

5) That therefore, I adopt the recommendations of the GAL, modified as follows:

    a) That residential time with the father is reserved for family therapy;

    b) That Mr. Walker and [M.J.W.] should recommence family therapy with Jacqui Parkes;

    c) That the number of family therapy sessions shall be as recommended by Ms. Parkes;

    d) That contact between Mr. Walker and [M.J.W.] shall be addressed during therapy as recommended in Paragraph 5 of the GAL Report;

    e) That contact with [M.J.W.] shall be exclusively with Mr. Walker and not other members of his family until approved by [M.J.W.] in consultation with Mr. Walker and Ms. Parkes;

    f) That [M.J.W.] shall continue therapy with Jennifer Knight until released by Ms. Knight;

    g) That when both therapists agree or by further order of the Court, that [M.J.W.] has established necessary bonds of trust with Mr. Walker to be ready for residential time, such time shall be phased;

    h) Phase One shall be one dinner visit every other week for 3 hours to include only Mr. Walker and [M.J.W.];

    i) Phase Two shall be 4 hours every other weekend in addition to Phase One, to include only the father and [M.J.W.] unless otherwise agreed in consultation with the therapists;

    j) That an additional phase shall be reserved pending an evaluation of the progress of re-integration;

3

k) That each phase shall be followed by the Petitioner on a consistent basis;

l) That termination of therapy for whatever reason shall be reported to the Court;

m) That Respondent shall have sole decision-making on major decisions regarding education, non-emergency medical decisions and religious upbringing;

n) That any decision concerning family therapy changes or an increase in financial commitment by the Petitioner - after notice to Mr. Walker - Mr. Walker may request arbitration;

o) That Respondent shall keep the father informed of all major developments in [M.J.W.]'s education, health and well-being.

The court scheduled a presentation hearing for June 20, 2014 at 10:00 a.m. and directed Johnson's attorney to "prepare the final orders and provide a copy to the Petitioner, Johnathan Walker prior to the presentation date."

The parties appeared at the presentation hearing on June 20. Johnson's attorney presented "Findings of Fact and Conclusions of Law on Petition for Residential Schedule/Parenting Plan or Child Support," a "Final Parenting Plan," an "Order of Child Support" and "Washington State Child Support Schedule Worksheets," and a "Judgment and Order Establishing Residential Schedule/Parenting Plan." Walker appeared pro se. The record establishes Walker did not receive copies of the final orders before the presentation hearing. Johnson's attorney told the court, "Mr. Walker's here, and he's reviewing [the orders]. I don't know how far he's gotten." Walker signed the final parenting plan and handed it to the court. The court asked Walker if he needed

additional time to review the other orders.

> THE COURT: Mr. Walker, have you had an opportunity to take a look at [the orders]?
> MR. WALKER: Yes. So far, I've looked at four of them.
> THE COURT: Yeah, do you need some additional time?
> MR. WALKER: Yeah.

Following a short recess, the court asked Walker if he had additional questions.

Walker objected to the order of child support and worksheets.

> Your Honor, you have to, first off, excuse me, because I obviously didn't know about this, about the stuff being submitted.
> I thought that the judgment would be for every - all the way, across the board - for financial, and for the parenting plan.
> I don't agree with the financial side of it, because what's been drawn up, by the amounts that are in there - I never made those amounts. The monthly child support that's been put in there is even higher than when I was still working, and the temporary order was put in place, and I was paying child support through the State.
> Then, there's the guardian ad litem; I never agreed to having a guardian ad litem, for reasons of not being able to pay for it, in the beginning. And I can't pay for it now.
> And that's it.

The court added a provision to the order of child support permitting Walker to "seek adjustment if he becomes employed and the income is less than imputed income herein." The court also stated that it would not allocate any GAL fees to Walker because "based on the testimony at trial, the money is not there to pay it." The court entered the findings of fact and conclusions of law, the judgment and order establishing the residential schedule and parenting plan, and the order of child support.

Walker argues the court erred in entering the final parenting plan and order of child support because Johnson did not comply with the requirement to provide copies of the orders before the presentation hearing.

The Civil Rules require that a party receive findings of fact and conclusions of law as well as proposed orders before the court signs them. CR 52(c) states, in pertinent part, "[T]he court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions." CR 54(f)(2) states, in pertinent part, "No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment."

Johnson argues that because Walker did not object to the failure to comply with the Civil Rules, he waived the right to argue that he did not receive notice of the proposed orders. The record does not support Johnson's argument.

At the beginning of the presentation hearing, Walker told the court he did not receive copies of the proposed orders, "Your Honor, you have to, first off, excuse me, because I obviously didn't know about this, about the stuff being submitted." Although Walker did not cite the Civil Rules, he preserved the issue for review. See Greenfield v. W. Heritage Ins. Co., 154 Wn. App. 795, 801, 226 P.3d 199 (2010) (failure to cite specific RCW section did not preclude appellate review where party argued issue).

In the alternative, Johnson asserts Walker cannot show prejudice. Walker asserts prejudice because he did not have time to object to the contents of the final parenting plan or order of child support.

A violation of CR 52(c) or CR 54(f)(2) supports reversal on appeal if there was prejudice to the appellant. Yakima County v. Evans, 135 Wn. App. 212, 222, 143 P.3d 891 (2006) (citing Seidler v. Hansen, 14 Wn. App. 915, 919-20, 547 P.2d 917 (1976));

Burton v. Ascol, 105 Wn.2d 344, 352, 715 P.2d 110 (1986). The purpose of the rules is to afford a party an opportunity to evaluate and object to the contents of proposed orders. See 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 728, 281 P.3d 693 (2012); Tacoma Recycling, Inc. v. Capitol Material Handling Co., 34 Wn. App. 392, 396, 661 P.2d 609 (1983) ("[Appellant] is entitled to 5 days' notice of presentation of any proposed findings and conclusions in order to evaluate them and prepare all relevant arguments against their adoption."); 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 54, at 318 (6th ed. 2013) (The purpose of the rule is to give a party the opportunity to object to the form or content of the judgment before it is entered.).

Walker cannot show prejudice as to entry of the final parenting plan. The material provisions of the final parenting plan reflected not only the recommendations of the GAL submitted before trial but also the court's June 9 letter ruling.[1] The "Residential Schedule" section of the final parenting plan states, in pertinent part:

3.2 School Schedule

Upon enrollment in school, the child shall reside with the mother. Residential time with the father should be reserved for family therapy.

Through therapy, contact between the child and the father should be addressed pending scheduled residential time, such as the father's attendance at school and sporting events, email, telephone/texting, etc.

Once both therapists (Jennifer Knight and Jacqui Parkes) agree, or by further order of the Court, that [M.J.W.] has established necessary bonds of trust with the father to be ready for residential time, such time shall be phased:

Phase I. One dinner visit every other week, for 3 hours to include only the father and [M.J.W.];

---

[1] The record also shows Walker reviewed and signed the final parenting plan without objection.

Phase II.  4 hours every other weekend in addition to Phase One, to include only the father and [M.J.W.] unless otherwise agreed in consultation with the therapists;

Additional phases of visitation shall be reserved pending an evaluation of the progress of re-integration.  Each phase of visitation shall be followed by the father on a consistent basis.  The termination of therapy for whatever reason shall be reported to the Court.

However, we conclude the record shows prejudice as to entry of the order of child support.  The court's letter ruling does not mention child support.  The order of child support and the worksheets contain a number of significant provisions.  For example, the order of child support imputed income to Walker of $3,448 "because he is voluntarily underemployed."  The order of child support states Walker owes a significant amount of back child support and requires Walker to pay 78 percent of the following expenses:

1.  Agreed-upon extracurricular activities of the children, including but not limited to horseback riding, soccer and dance lessons. Extracurricular activity fees shall include travel/lodging, gas, airfare, uniforms, pictures, shoes, and other fees;

2.  Camps, clubs, activities, day care, educational expenses, tuition, school costs, [associated student body] fees, senior pictures, prom, homecoming, long distance expenses, any extracurricular or sports activities, orthodontia expenses;

3.  Any one-time expense that is outside the normal basic food and shelter expense for the children.

Despite the recess to allow Walker to review the child support order and worksheets and the court's consideration of Walker's objection to one aspect of the order, the record shows Walker did not have adequate time to evaluate the order of child support and raise additional objections.

8

We affirm entry of the final parenting plan but reverse entry of the order of child support, and remand.[2]

WE CONCUR:

---

9