199 P.3d 430 (2008)
WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, Respondent,
v.
Leonard BROWNING and Barbara Drake, Appellants.
No. 26455-6-III.
Court of Appeals of Washington, Division 3.
November 18, 2008.
Publication Ordered January 13, 2009.
*432 Leonard Browning, Pro Se.
Barbara Drake, Pro Se.
Cheryl Ann Nielson, Attorney at Law, Atty. Gen. Office Nat. Res. Div., Olympia, WA, for Respondent.
KULIK, J.
¶ 1 Leonard Browning leases two pieces of property from Barbara Drake. These properties are located in Pend Oreille County. In 2006, Department of Natural Resources (DNR) forester Marc LeClaire issued two stop work orders prohibiting any further timber harvesting on the properties. Ms. Drake and Mr. Browning did not appeal these orders to the Forest Practices Appeals Board (Board). Several months later, DNR sought enforcement of the orders in superior court. The court granted an injunction enforcing the orders. We conclude that the trial court did not abuse its discretion by entering the enforcement order and injunction. We affirm the trial court's order granting civil enforcement of DNR's orders and injunctive relief. We reverse the award of expanded fees and affirm the award of fees in the trial court. We grant attorney fees on appeal.

FACTS
¶ 2 In November 2005, a neighbor observed logging on property owned by Barbara Drake in Pend Oreille County. Ms. Drake has a fee interest in the property and leases it to Leonard Browning.
¶ 3 In January 2006, DNR received a complaint that forest practices on the property were adversely affecting a road. DNR sent Marc LeClaire, a DNR forester, to visit the property. Mr. LeClaire determined that although the property was capable of supporting a merchantable stand of timber, most of the property had been partially harvested. Moreover, approximately three acres had been clear cut and the stumps had been removed.
¶ 4 While on the property, Mr. LeClaire met Mr. Browning. Mr. LeClaire issued Mr. Browning stop work order no. 11549, which directed that no further forest practices should take place without the proper forest practices permits. DNR sent a copy of the stop work order to Ms. Drake, Mr. Browning, the Board, and other state agencies. The stop work order informed Mr. Browning that the order may be appealed to the Board. Stop work order no. 11549 was not appealed. Bulldozing and stump removal continued after the stop work order was issued, even though no forest practices permits were obtained.
¶ 5 Several months earlier, Mr. LeClaire inspected another piece of property owned by Ms. Drake in section 12 in Pend Oreille County. Skookum Creek runs along the entire 14 acres of this property. The Skookum Creek property is located near the property where Mr. LeClaire issued stop work order no. 11549. Ms. Drake owns this property and Mr. Browning controls the property by mutual agreement.
¶ 6 Mr. LeClaire determined that logging had occurred, but that the harvest probably did not require a forest practices permit. However, Mr. LeClaire also determined that any further harvesting would require a permit. Mr. LeClaire concluded that the property was capable of supporting a merchantable stand of timber, which it was, in fact, doing. Before Mr. Browning began harvesting *433 the Skookum Creek property, it contained a full stand of mature trees, including pine, cedar, fir, and larch. Ms. Drake admits that Mr. Browning harvested trees, including trees along Skookum Creek, and that he built roads on the property.
¶ 7 Mr. LeClaire called Mr. Browning and told him not to conduct any further harvesting before the two men could meet to determine whether Mr. Browning had obtained a forest practices permit. However, Mr. Browning continued harvesting.
¶ 8 In November 2006, Mr. LeClaire again inspected the Skookum Creek property. He observed that more logging had taken place since his last visit, some of the parcel had been clear cut, and trees had been harvested on about 100 feet along Skookum Creek. Skookum Creek is a habitat for an endangered fish species and forest practices rules require a riparian management zone up to 130 feet on each side of the creek. He determined that these activities required a forest practices permit.
¶ 9 Mr. LeClaire posted a stop work order sign on the Skookum Creek property. He also drafted stop work order no. NE-0335, which was mailed to Mr. Browning on November 15, 2006. Copies were sent to Ms. Drake, the Board and other state agencies. The stop work order directed that no further forest practices should take place without the proper forest practices permits. The stop work order informed Mr. Browning that the order may be appealed to the Board.
¶ 10 In November 2006, Ms. Drake sent a letter to DNR under Mr. Browning's name, challenging DNR's authority to regulate the property. Neither Ms. Drake nor Mr. Browning appealed the stop work orders to the Board.
¶ 11 Timber harvesting and related activities continued after the November 2006 stop work order was issued. DNR continued to receive complaints from neighbors concerning bulldozing, logging, and stump removal on the Skookum Creek property. Mr. LeClaire's declaration of July 2007 estimated that at least 20,000 board feet of timber was taken from the property. Neither Ms. Drake nor Mr. Browning applied for forest practices permits.
¶ 12 In July 2007, DNR filed a petition for enforcement and injunctive relief under chapter 34.05 RCW, the Administrative Procedure Act (APA), and chapter 76.09 RCW, the Forest Practices Act of 1974(FPA). The superior court granted the petition for enforcement and injunctive relief, awarded attorney fees, and entered judgment in favor of DNR. This appeal followed.

ANALYSIS
¶ 13 I. Jurisdiction. In adopting the FPA, the legislature recognized that "forest land resources are among the most valuable of all resources in the state" and "a viable forest products industry is of prime importance to the state's economy." RCW 76.09.010(1). One of the goals of the FPA was to create and maintain "a comprehensive statewide system of laws and forest practices rules which will achieve" the purposes and policies of the FPA. RCW 76.09.010(2).
¶ 14 "`Forest practice' means any activity conducted on or directly pertaining to forest land and relating to growing, harvesting, or processing timber." RCW 76.09.020(11). "Forest land" means "all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing." RCW 76.09.020(9).
¶ 15 DNR administers and enforces the FPA by approving forest practices applications and issuing stop work orders where there is a violation of law or regulations, or where there is the potential for public resource damage. RCW 76.09.050, .080. DNR serves the stop work order on the logging operator and sends copies to the landowner/timber owner, the Board, and other agencies. RCW 76.09.080(1), (2)(d). The land owner, timber owner, or operator may appeal to the Board. RCW 76.09.080(2)(d); RCW 43.21B.005(1). Parties have a statutory right to an adjudicative hearing. RCW 76.09.080(2)(d), .220(7).
¶ 16 Here, Mr. LeClaire served two stop work orders, but Ms. Drake and Mr. Browning did not appeal the orders or seek a *434 hearing before the Board. Consequently, the stop work orders constituted the Board's final order. RCW 76.09.080(1); see Heidgerken v. Dep't of Natural Resources, 99 Wash.App. 380, 386, 993 P.2d 934 (2000). Because Ms. Drake and Mr. Browning failed to appeal, they are now precluded from challenging the authority of DNR to issue the stop work orders. RCW 34.05.586(1),.570(3)(a). In addition, Ms. Drake and Mr. Browning did not assign error to the findings of fact and conclusions of law related to their ability to collaterally attack the stop work orders. Hence, these findings are verities on appeal. State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003).
¶ 17 DNR's evidence, along with Mr. Browning's and Ms. Drake's admissions, established that Mr. Browning and Ms. Drake harvested timber and built roads in Pend Oreille County without forest practices permits. Consequently, the stop work orders remained in effect unless later suspended pending the outcome of the adjudicative proceeding. See RCW 76.09.080(2)(d).
¶ 18 Ms. Drake and Mr. Browning maintain that the superior court did not have jurisdiction to hear DNR's enforcement action. We disagree.
¶ 19 The APA and the FPA give superior courts the authority to enforce stop work orders issued by DNR. RCW 34.05.578; RCW 76.09.140(2). The APA provides for a petition for enforcement of agency orders. RCW 34.05.578, .586, .590, .594. Read together, the APA and the FPA allow superior courts to provide DNR with declaratory relief, temporary or permanent injunctive relief, show cause and contempt orders, or any other civil remedy provided by law. RCW 34.05.578(4); RCW 76.09.140(2). The APA also provides the "[v]enue is determined as in other civil cases." RCW 34.05.578(3). Venue for injury to real property is in the county where the property is situated. RCW 4.12.010(1). Here, venue was proper in Pend Oreille County.
¶ 20 In summary, the stop work orders were final orders and the Pend Oreille County Superior Court had jurisdiction to hear the enforcement action.
¶ 21 Mr. Browning argues that the superior court did not have jurisdiction because it was a court of admiralty, and because he is a "sovereign American citizen." Br. of Appellant Browning at 18. Because Mr. Browning fails to provide any legal authority for his arguments, we do not address them. See Johnson v. Mermis, 91 Wash. App. 127, 136, 955 P.2d 826 (1998).
¶ 22 Mr. Browning also argues that DNR lacks standing before the superior court. However, again, Mr. Browning fails to provide reasoned argument demonstrating why DNR lacks standing in superior court when requesting enforcement of a DNR order. Consequently, we will not address these arguments.
¶ 23 II. Abuse of Discretion. After Ms. Drake and Mr. Browning ignored the stop work orders, DNR sought enforcement of the final stop work orders. If a party fails to comply with an agency's administrative order, the agency may file a petition for civil enforcement and seek "declaratory relief, temporary or permanent injunctive relief, any other civil remedy provided by law, or any combination of the foregoing." RCW 34.05.578(4).
¶ 24 The parties disagree as to the standard of review for this court's review of the trial court's order granting civil enforcement of DNR's order and injunctive relief. Ms. Drake and Mr. Browning contend that this court should apply RCW 34.05.570(3). DNR maintains that RCW 34.05.570(3) applies only if the stop work orders resulted from adjudicative proceedings. DNR asserts the standard of review is abuse of discretion. We agree.
¶ 25 RCW 34.05.570(3) describes the "[r]eview of agency orders in adjudicative proceedings." As previously noted, the orders here became final when Ms. Drake and Mr. Browning failed to seek an appeal before the Board. DNR then obtained an injunction to enforce the final orders. The APA provides that: "Decisions on petitions for civil enforcement are reviewable as in other civil cases." RCW 34.05.594. We review a trial court's decision concerning an injunction for *435 an abuse of discretion. Brown v. Voss, 105 Wash.2d 366, 372-73, 715 P.2d 514 (1986).
¶ 26 In a proceeding for civil enforcement, a party may not assert as a defense any fact or issue the party had the opportunity to assert before the agency or reviewing court. RCW 34.05.586(1). Ms. Drake and Mr. Browning received notices that the stop work orders could be appealed to the Board. This constituted an "opportunity" to be heard before the agency, but Ms. Drake and Mr. Browning did not appeal the orders. Thus, Ms. Drake and Mr. Browning are limited in the defenses they can present on appeal.
¶ 27 The question then is whether the trial court abused its discretion by issuing an injunction. Discretion is abused if the trial court's "decision is manifestly unreasonable or is based on untenable reasons or grounds." State v. C.J., 148 Wash.2d 672, 686, 63 P.3d 765 (2003). We review issues of law de novo. State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991).
¶ 28 Ms. Drake and Mr. Browning argue that the properties are not "forest land" under RCW 76.09.020(9). They assert that the areas without timber are not forest land. Specifically, they contend these portions of the properties are being used for a use that is incompatible with timber growing.
¶ 29 RCW 76.09.020(9) reads in part: "`Forest land' means all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing."
¶ 30 Here, Ms. Drake and Mr. Browning admitted that they conducted forest practices for the purpose of converting land to a nonforest use. These practices should have been regulated by DNR. In finding of fact 1.7, the court found that: "Forest practices were conducted on the sites subject to the two Stop Work Orders before and after the Orders were issued and in violation of the Orders." Clerk's Papers (CP) at 307. The court also found that: "Most of [the] area of both sites are [sic] being used for growing timber. Both sites have small areas within them that are being used for outbuildings and other uses incompatible with timber growing." CP at 307. Ms. Drake and Mr. Browning do not assign error to these findings.
¶ 31 Ms. Drake and Mr. Browning also contend that the properties are not forest land because of county tax and zoning classifications. However, a property's tax and zoning status is irrelevant to its status as forest land. Heidgerken, 99 Wash.App. at 390, 993 P.2d 934.
¶ 32 Similarly, Ms. Drake and Mr. Browning argue that the FPA provides for the regulation of commercial forest land. This argument was rejected in Department of Natural Resources v. Marr, 54 Wash.App. 589, 594-95, 774 P.2d 1260 (1989).
¶ 33 Ms. Drake and Mr. Browning next contend that there is a five-acre residential exemption to the definition of "forest land." Ms. Drake admits that Mr. Browning constructed roads, but she claims this activity is exempt from the FPA because the roads are for residential access. But the five-acre residential exemption "applies to the operation of the road maintenance and abandonment plan element of the forest practices rules on small forest landowners." RCW 76.09.020(9), (13).
¶ 34 We conclude that the trial court did not abuse its discretion by granting DNR's petition to enforce the stop work orders.
¶ 35 Ms. Drake and Mr. Browning contend that the superior court's order violates their due process rights, constitutes an unreasonable exercise of police power, and results in unconstitutional takings. These arguments were rejected in State v. Dexter, 32 Wash.2d 551, 557-63, 202 P.2d 906 (1949), where the court considered a former version of the FPA. Moreover, the stop work orders here do not take the properties, but, instead, direct Ms. Drake and Mr. Browning to refrain from conducting forest practices without obtaining the necessary forest practices permits.
¶ 36 Lastly, Mr. Browning contends the APA violates his right to privacy under the Washington Constitution and the United States Constitution. He maintains that Mr. LeClaire entered onto his property on two *436 occasions to hand deliver the stop work orders, despite posted no-trespass signs.[1]
¶ 37 Mr. Browning did not present his right to privacy issue at trial. In his memorandum on reconsideration, he only mentions the words "Fourth Amendment property rights" with no argument or citation to authority. CP at 85. We need not consider arguments for which a party provides no briefing or citation to authority. State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990). Here, Mr. Browning raises the right to privacy argument in a paragraph in his opening brief. He relies on facts that are not included in the trial court's findings.
¶ 38 A court will hear constitutional arguments not raised at trial if the claimed error is a "`manifest error affecting a constitutional right.'" State v. WWJ Corp., 138 Wash.2d 595, 601, 980 P.2d 1257 (1999) (quoting RAP 2.5(a)). An error is manifest if it results in prejudice. Id. at 602-03, 980 P.2d 1257. Nothing in the record suggests Mr. Browning's rights were violated but, even if so, the evidence remaining after any exclusion would still support the stop work orders. The evidence gathered by Mr. LeClaire was otherwise discoverable from the public road, neighboring properties, and aerial photographs.
¶ 39 III. Costs and Attorney Fees. The FPA allows DNR to enforce the FPA and to seek "penalties, interest, costs, and attorneys' fees." RCW 76.09.140(2). Where a statute does not specify the manner in which fees should be calculated, the lodestar method may be employed. Absher Constr. Co. v. Kent Sch. Dist. No. 415, 79 Wash.App. 841, 846-47, 917 P.2d 1086 (1995). Under the lodestar method, fees are determined by multiplying the hours reasonably expended in the litigation by the attorney's reasonable hourly rate of compensation. Id. at 847, 917 P.2d 1086. Here, the court awarded DNR costs under RCW 4.84.010, plus an award of expanded costs.
¶ 40 Expanded costs are allowed where supported by the language and underlying policy objectives of the substantive statute. See, e.g., Blair v. Wash. State Univ., 108 Wash.2d 558, 740 P.2d 1379 (1987) (civil rights litigation); Am. Civil Liberties Union of Washington v. Blaine Sch. Dist. No. 503, 95 Wash.App. 106, 975 P.2d 536 (1999) (public records act); La.-Pac. Corp. v. Asarco Inc., 131 Wash.2d 587, 934 P.2d 685 (1997) (Model Toxics Control Act, chapters 70.105D and 82.21).
¶ 41 DNR argues that the language in the FPA does not limit the costs awardable to DNR to those costs listed in RCW 4.84.010. DNR asserts that the terms used in the FPA are similar to the terms used in the Model Toxics Control Act which has been found to support expanded costs. But in the Model Toxics Control Act, the costs in RCW 70.105D.080 include "reasonable attorneys' fees and costs," while RCW 76.09.140(2) supports an award of "costs, and attorneys' fees."
¶ 42 In Louisiana-Pacific, the court determined that the Model Toxics Control Act allowed an interpretation that provided a private right of action for the recovery of remedial action costs. La.-Pac., 131 Wash.2d at 604, 934 P.2d 685. The court concluded that remedial action costs shall be based on equitable factors and shall include reasonable attorney fees. Id. The FPA, which allows for only an award of costs and attorney fees, does not lend itself to this expansive reading.
¶ 43 We affirm the trial court's order granting civil enforcement of DNR's orders and injunctive relief. We reverse the award of expanded fees and affirm the award of fees in the trial court. We grant attorney fees on appeal.
WE CONCUR: SCHULTHEIS, C.J., and KORSMO, J.
NOTES
[1] RCW 76.09.150(2) provides that a representative of DNR "shall have the right to enter upon forest land at any reasonable time to enforce the provisions of [the FPA] and the forest practices rules."