[No. 23995-7-II.   Division Two.   February 11, 2000.]

GEORGE F. HEIDGERKEN, *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

*Craig Andrew Ritchie* of *Ritchie & Strohmeyer,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Kay M. Brown, Assistant,* for respondent.

SEINFELD, J. — George Heidgerken appeals a $10,000 civil penalty imposed by the Department of Natural Resources (DNR). The DNR fined Heidgerken because of his failure to comply with a Forest Practices Act of 1974 reforestation order. Heidgerken contends that DNR improperly applied the penalty statute retroactively. We conclude that because Heidgerken violated the statute after its effective date, DNR applied it prospectively. Further, we find no merit to Heidgerken's other issues. Thus, we affirm.

## FACTS

Heidgerken owned 340 acres of forested land in Grays Harbor County. In 1989, he filed a forest practices application for the site wherein he (1) sought permission to harvest 270 acres of timber from the site, (2) declared that he did not intend to develop the land within three years, and (3) declared that he would reforest the site by planting Douglas Fir seedlings at the density of 300 stems per acre by 1991. DNR approved the application.

Heidgerken completed the harvest in mid-1990; the harvest yielded approximately $2,325,000 in gross income and $312,000 in net proceeds. It would have cost between $16,000 and $20,000 to reforest the land following the harvest. But Heidgerken reforested only about 50 of the 270 harvested acres.

Heidgerken had no plan to develop the property when he filed the forest practices application. Although he later made subdivision plans, he never used the site in a manner incompatible with timber growing. At the time of the forest practices application, the county taxed the property as timberland. In June 1994, the county notified Heidgerken that it had changed the zoning and tax status of the property to residential.

On June 1, 1993, Heidgerken sent DNR a letter expressing his intent to reforest the property, and on June 18 he sent a follow-up letter confirming his intent to begin reforestation in the winter of 1993. On June 24, 1993, DNR sent Heidgerken a notice to comply ordering him to reforest the property by February 15, 1994. Heidgerken replied with a letter stating that he had retained a contractor to do the planting and would complete reforestation in January 1994.

But on January 10, 1994, Heidgerken wrote DNR that he would be unable to meet the February 1994 deadline and wanted a one-year extension. DNR denied this request.

Heidgerken failed to reforest the property by February 15, 1994. Consequently, DNR assessed a $10,000 civil penalty against him on March 10, 1994.

On March 21, 1994, Heidgerken sent DNR a request that it set the matter aside until June 1994. The letter stated that subsequent purchasers of the property had the reforestation obligation. But DNR, noting that a recent title report listed Heidgerken as record owner, denied the requested relief. And on May 2, 1994, DNR sent Heidgerken a notice of intent to disapprove future forest practices applications for the period of one year because of his failure to reforest the property and to pay the civil penalty.

Heidgerken appealed to the Forest Practices Appeals Board (the Board). While the appeal was pending, Heidgerken and DNR stipulated to a conditional dismissal of the penalties if Heidgerken reforested all portions of the 270 acres by December 30, 1995, regardless of any ownership dispute with the purported purchasers of the property. Because Heidgerken did not perform the reforestation as agreed, DNR reinstated the penalties and Heidgerken's appeal to the Board resumed.

The Board affirmed the $10,000 civil penalty and notice

of intent to disapprove and the Grays Harbor County Superior Court affirmed the Board's decision.

## DISCUSSION
### A. Forest Practices Act

█ The Washington Administrative Procedure Act (APA), RCW 34.05.510 through .598, governs our review of the Board's decision. RCW 76.09.230(5). We "look to the administrative record, and not the superior court findings or conclusions, when conducting review." *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994) (citing *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 672-73, 860 P.2d 1024 (1993); *Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 772-73, 822 P.2d 791, 45 A.L.R.5TH 907 (1992)). Heidgerken, as the party asserting the invalidity of DNR's action, bears the burden of demonstrating that invalidity. RCW 34.05.570(1)(a); *Hillis v. Department of Ecology*, 131 Wn.2d 373, 381, 932 P.2d 139 (1997).

█ We apply a substantial evidence standard to the agency's findings of fact but review de novo its conclusions of law. *Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996). Unchallenged findings of fact are verities on appeal. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995); *Tucker v. Columbia River Gorge Comm'n*, 73 Wn. App. 74, 82, 867 P.2d 686 (1994). Heidgerken does not assign error to any of the Board's factual findings.

Under the APA, a reviewing court will reverse an administrative decision that (1) violates a constitutional provision on its face or as applied, (2) lies outside the agency's lawful authority or jurisdiction, (3) is a result of an erroneous interpretation or application of the law, (4) is not based on substantial evidence, or (5) is arbitrary or capricious. RCW 34.05.570(3); *see also Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Heidgerken does not address directly any of the above grounds for reversal. But he suggests generally that DNR

erroneously interpreted or applied two provisions of the Forest Practices Act of 1974 (FPA), RCW 76.09.140 and .170.

The construction of a statute is a question of law subject to de novo review. *Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996); *Waste Management*, 123 Wn.2d at 627. Our goal in interpreting statutes is to ascertain and give effect to legislative intent. *City of Redmond v. Central Puget Sound Growth Management Hearings Bd.*, 136 Wn.2d 38, 52, 959 P.2d 1091 (1998). We construe related statutes as a whole, trying to give effect to all the language and to harmonize all provisions. *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

One purpose of the FPA is to "[a]fford protection to, promote, foster and encourage timber growth, and require such minimum reforestation of commercial tree species on forest lands as will reasonably utilize the timber growing capacity of the soil following current timber harvest[.]" RCW 76.09.010(2)(a). Accordingly, a forest operator is obligated to reforest cleared land within three years after completion of a logging operation.[1] RCW 76.09.070.

When a forest operator violates or deviates from the FPA or related regulations, DNR can attempt to enforce compliance. In appropriate circumstances, it may serve a stop-work order upon the operator. RCW 76.09.080. But where a stop-work order is unnecessary, DNR may issue a notice of failure to comply that sets forth (1) a description of the violation, (2) the relevant provisions of the FPA or regulations, (3) the operator's right to request a hearing, and (4) the "specific course of action ordered by the department . . . to correct such failure to comply[.]" RCW 76.09.090. DNR served Heidgerken with a notice of failure to comply that met these statutory requirements and required reforestation by February 15, 1994.

---

[1]RCW 76.09.070 provides some limited exceptions to the three-year requirement, not applicable here. Heidgerken concedes he did not reforest within the three-year limit imposed under RCW 76.09.070.

Although an operator may request a DNR hearing to review a notice to comply, RCW 76.09.090(3), Heidgerken never sought such a hearing. The notice of failure to comply constituted DNR's final order. RCW 76.09.090(3).

On March 10, 1994, DNR imposed the penalty for Heidgerken's failure to comply with this final order. "Every person who violates any provision of RCW 76.09.010 through 76.09.280 or of the forest practice rules . . . shall be subject to a penalty in an amount of not more than ten thousand dollars for every such violation." RCW 76.09.170(1); *see also* WAC 222-46-060 (giving DNR discretion to adjust penalty in light of factors surrounding the violation).[2]

Absent an application for remission or mitigation of the penalty, it was due 30 days after the assessment. RCW 76.09.170(5); *see also* WAC 222-46-060(7) (rule pertaining to violator's right to seek mitigation or remission). Heidgerken sent a letter to DNR requesting remission on March 21, 1994.

DNR denied remission or mitigation on April 27, 1994. The penalty then became payable 30 days from that date unless Heidgerken filed an appeal with the Board. RCW 76.09.170(5); *see also* WAC 222-46-060(9) (rule pertaining to time penalty is due). Heidgerken filed his appeal on May 24, 1994.

When an operator has failed to comply with a final order of DNR or has failed to pay a civil penalty under RCW 76.09.170, DNR "may disapprove for up to one year any forest practices application[.]" Former RCW 76.09.140 (1993). On May 2, 1994, DNR gave Heidgerken notice that

---

[2]WAC 222-46-065 provides for a base penalty of $2,000 for a party's significant deviation from an approved forest practices application. The factors of repairability to the site, the intent of the violator, and lack of cooperation each allow a doubling of the penalty. WAC 222-46-060(3)(b)(i), (ii), (iii). Here, the Board found each of these factors applied to the base penalty of $2,000 and thus sustained the maximum penalty of $10,000. Although Heidgerken assigns error to the magnitude of the penalty, he does not present an argument challenging the Board's method of calculation. *See Smith v. King*, 106 Wn.2d 443, 451-52, 722 P2d 796 (1986) (party waives assignment of error unsupported with argument or briefing).

it would disapprove any forest practices applications he might submit for one year because of (1) his failure to comply with the DNR order to reforest by February 15, 1994, and (2) his failure to pay the $10,000 penalty imposed under RCW 76.09.170.

## B. Retroactivity and Vested Rights

Heidgerken asserts that the $10,000 fine was an invalid retroactive application of an amended version of RCW 76.09.170. He argues that because he submitted his forest practices application in 1989, he had a vested right to incur no more than the $500 penalty contained in former RCW 76.09.170.[3]

Former RCW 76.09.170 (1975) provided for a penalty of not more than $500 for a violation of a forest practices regulation. The Legislature amended the statute, effective January 1, 1994, to raise the civil penalty to not more than $10,000 for such a violation. Laws of 1993, ch. 482, § 2. The Legislature deemed the increased penalty necessary to create a more effective deterrent against FPA violations.

A reviewing court presumes a statute operates prospectively unless the Legislature indicates it is to apply retroactively. *State v. T.K.*, 139 Wn.2d 320, 329, 987 P.2d 63 (1999). Reviewing courts disfavor retroactivity. *Id.* at 329; *In re Estate of Burns*, 131 Wn.2d 104, 110, 928 P.2d 1094 (1997).

" ' 'A statute operates prospectively when the

---

[3]Heidgerken did not raise the vested rights issue before the Board; he first presented the issue in oral argument before the superior court. Heidgerken's appeal before the Board focused on (1) the impact of the sale of the property on his ability to comply with the reforestation requirement, (2) the reasonableness of DNR's actions, (3) a claim of unconstitutional taking, and (4) a change of use issue.

Ordinarily, a party may not raise on appeal an issue it did not raise before the agency. RCW 34.05.554; *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993); *Nielsen v. Employment Sec. Dep't*, 93 Wn. App. 21, 43, 966 P.2d 399 (1998). "However, this court has inherent authority to consider all issues necessary to reach a proper decision." *Id.* at 43 (citing *Shoreline Community College Dist. No. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 402, 842 P.2d 938 (1992)).

precipitating event for [its] application . . . occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.' " *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992) (quoting *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)). " 'A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law.' " *T.K.*, 139 Wn.2d at 330 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)).

To determine whether DNR applied the penalty statute retroactively, we must determine which of Heidgerken's acts constituted the "precipitating event." Heidgerken contends that the precipitating event was his failure to reforest the property within three years after he completed the logging operation in June 1990. At that time, the maximum civil penalty was $500. DNR argues that the precipitating event was either Heidgerken's failure to comply by February 15, 1994, the extended date set forth in the June 24, 1993, notice to comply or his failure to comply by December 30, 1995, the date contained in the stipulated agreement between DNR and Heidgerken. The $10,000 penalty applied at the time of either of these events.

We may affirm on any theory supported by the record and legal authorities even if the lower tribunal did not consider such grounds. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989); *Wendle v. Farrow*, 102 Wn.2d 380, 382, 686 P.2d 480 (1984). Here, Heidgerken violated RCW 76.09.070 when he failed to reforest the property by June 1993. Heidgerken then sought more time to complete reforestation and DNR responded under RCW 76.09.090 by serving him with notice to comply by February 15, 1994. It was this latter violation of RCW 76.09.090 that triggered the penalty. Consequently, the precipitating event was the February 1994 violation. Although this event had its origins

in conduct antedating the amended statute—Heidgerken's 1989 application and his failure to reforest by June 1993— the precipitating event occurred after the effective date of the amendment. RCW 76.09.170. Thus, DNR could apply the amended statute prospectively. *Belgarde*, 119 Wn.2d at 722.

Moreover, even after the imposition of the $10,000 penalty, DNR, through a stipulated agreement and order, offered Heidgerken another opportunity to complete reforestation by December 30, 1995, and thereby quash the penalties. Heidgerken agreed to comply but, again, failed to act in violation of the agreement.

Because RCW 76.09.170 applied prospectively in this case, Heidgerken's vested rights argument must fail also. *T.K.*, 139 Wn.2d at 333 (noting that statute will not apply retroactively if it affects a substantive or vested right). Further, this reasoning applies to Heidgerken's challenge to DNR's notice of intent to disapprove future forest practice applications. The statute authorizing such notice, RCW 76.09.140, became effective on July 25, 1993. LAWS OF 1993, ch. 482, § 1. Here, Heidgerken's 1994 failure to comply with the final order triggered the injunctive effect of RCW 76.09.140.[4] Consequently, RCW 76.09.140 also applied prospectively.

## C. CHANGE OF USE

Heidgerken also contends that DNR lacked authority to require reforestation because his development plans and the county's change of the zoning and tax status of the property amounted to a change in use from forest land to residential use. DNR responds that because Heidgerken never put the property to an active use incompatible with

---

[4]But DNR's second basis for imposing RCW 76.09.140, failure to pay the monetary penalty, is invalid. Heidgerken's timely filing of an appeal with the Board stayed his obligation to pay the penalty until the completion of administrative and judicial review proceedings. RCW 76.09.170(5). Nonetheless, Heidgerken's failure to comply with DNR's reforestation order constituted adequate grounds to impose the notice to disapprove under RCW 76.09.140.

timber growing there was no change in use as the FPA uses that term.

The FPA defines "forest land" to mean "all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing." Former RCW 76.09.020(6) (1974). " 'Conversion to a use other than commercial timber operation' shall mean a bona fide conversion to an active use which is incompatible with timber growing and as may be defined by forest practices regulations." Former RCW 76.09.020(4) (1974).

▮▮ ▮ Under the FPA, "[f]orest land is converted to a use other than commercial timber production only when it is converted to an active use which is incompatible with timber growing." *Department of Natural Resources v. Marr*, 54 Wn. App. 589, 594-95, 774 P.2d 1260 (1989) (citing RCW 76.09.020(4)). Accordingly, a residential zoning designation alone will not remove forested land from coverage. *Marr*, 54 Wn. App. at 595. Moreover, neither zoning nor tax decisions of a local governing body will exclude forested land from FPA's regulations. RCW 76.09.240(4).

Here, the record shows no active use of the property inconsistent with timber growing notwithstanding the zoning or tax classification of the property.[5] At most, Heidgerken drew up plans to eventually divide the property into 20-acre parcels.

It would be inconsistent with the general scheme and intent of the FPA to interpret the statute as providing that the mere acts of rezoning, subdividing, or changing a forested parcel's property tax status would remove it from DNR regulatory power. *See Marr*, 54 Wn. App. at 595 (holding that if residential zoning precluded FPA coverage, "DNR would lose the ability to monitor the removal of a significant amount of timber, thereby losing the ability to effectively monitor the impact of logging on the environ-

---

[5]The county notified Heidgerken of the changed zoning and tax status in June 1994, after he had already violated the reforestation order.

ment"); *see also Fray v. Spokane County*, 134 Wn.2d 637, 648, 952 P.2d 601 (1998) (reviewing court should interpret statute to avoid absurd or strained results). Thus, we reject Heidgerken's argument as to change of use.[6]

Accordingly, we affirm.

HOUGHTON, J., and TOLLEFSON, J. PRO TEM., concur.

Review denied at 141 Wn.2d 1015 (2000).

---

[6]Heidgerken also contends that (1) the civil penalty was unreasonable, (2) the notice of intent to disapprove forest practice applications violates the Washington Constitution, and (3) DNR "has no natural penalizing authority on private property." Because Heidgerken cites no legal authorities in support of these arguments, we do not consider them. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Heidgerken also presents brief arguments grounded in ex post facto laws, and the savings clause set forth in RCW 10.01.040. But those theories relate to penal statutes and do not apply to the civil penalties discussed in this case. *See State v. Parker*, 132 Wn.2d 182, 191, 937 P.2d 575 (1997) (discussing ex post facto laws); *State v. Grant*, 89 Wn.2d 678, 683-84, 575 P.2d 210 (1978) (discussing purpose of RCW 10.01.040).