248 P.3d 581 (2011)
Robert EDELMAN, Appellant,
v.
STATE of Washington, Respondent.
No. 39995-4-II.
Court of Appeals of Washington, Division 2.
February 23, 2011.
*583 Michael J. Reitz, Attorney at Law, Olympia, WA, for Appellant.
Spencer Walter Daniels, Office of the Attorney General, Olympia, WA, for Respondent.
VAN DEREN, J.
¶ 1 Robert Edelman seeks review of an administrative decision denying his request that Washington's Secretary of State be required to amend current election registration procedures based on the federal election law known as the Help America Vote Act of 2002 (HAVA).[1] Edelman's complaint, filed with the Office of the Secretary of State, alleged that (1) Washington election officials' practice of "pending" voter registration applications from underage applicants and (2) Washington's mail in voter registration form violate HAVA. Finding no HAVA violation, we affirm.

*584 FACTS
¶ 2 Robert Edelman is a registered voter from Black Diamond, Washington, who is a research analyst for the Evergreen Freedom Foundation. Edelman reviews election procedures for the Foundation.
¶ 3 In reviewing the statewide voter registration database, Edelman discovered what appeared to be 16,085 underage registrations from January 2000 through March 2008. An "underage registration" is one where the registrant will not turn 18 on or before the day of the next election. Administrative Record (AR) at 3. Edelman further discovered what seemed to be 127 votes cast by probable underage individuals between January 2000 and February 2008.
¶ 4 County auditors process voter registration applications and they sometimes receive registration applications from applicants who will not turn 18 before the next election.[2] The Secretary of State, our chief election officer, has allowed county auditors to accept applications from 17 year olds but has directed them not to process any application until the applicant reaches the required voting age. The auditors "pend" these underage applications (i.e., applications from 17 year olds who will not be 18 by the date of the next election) in one of two ways, either by physically placing the registration application in a drawer or by adding the applicant to the local election management system under a "[p]ending status."[3] AR at 431. When the county auditor ascertains that the applicant will be 18 by the next election, the county auditor submits the applicant's information to the statewide voter database and places the application in "active status," meaning that the voter's registration is complete and he or she is eligible to vote. WAC 434-324-005(1).
¶ 5 Among its provisions, HAVA requires each state's chief election officer to create and maintain a computerized statewide voter registration list. 42 U.S.C. § 15483(a)(1)(A). Section 15483(a) also provides guidelines for list maintenance. 42 U.S.C. § 15483(a)(2), (4). HAVA also requires states to establish a state based administrative complaint procedure to allow a complaint by any person who believes there is a violation of HAVA. 42 U.S.C. § 15512. Our state's HAVA violation administrative complaint procedures are found in chapter 434-263 WAC. Complaints filed under chapter 434-263 WAC are treated as brief adjudicative proceedings under the Administrative Procedures Act (APA), chapter 34.05 RCW. WAC 434-263-030.
¶ 6 On June 13, 2008, Edelman filed an administrative complaint against the Secretary of State, alleging multiple violations of HAVA under WAC 434-263-020. Edelman alleged that (1) allowing county election officials to add ineligible, underage voters to the official statewide voter registration database as active voters violates the duty to maintain an accurate list, 42 U.S.C. § 15483(a)(4); (2) allowing county election officials to delay entry of registration information into the statewide voter registration list violates the obligation to enter registration information on an "expedited basis," 42 U.S.C. § 15483(a)(1)(A)(vi); and (3) Washington State's official mail in voter registration form does not include a statement that 42 U.S.C. § 15483(b)(4)(A)(iii) requires.
¶ 7 He requested that the Secretary of State (1) establish a written procedure requiring staff to examine all mail in registration forms the Secretary's office receives and to reject those where the applicant will not reach the age of 18 by the next election; (2) advise county auditors in writing that it is illegal to register an applicant who will not reach the age of 18 by the next election, that it is illegal to delay entry of registration data for eligible applicants, and that applications from ineligible registrants should be rejected; (3) add automatic controls to the voter registration list so that no underage registration *585 can be given active status; (4) add the statement required in 42 U.S.C. § 15483(b)(4)(A)(iii) to the state mail in registration form and destroy existing noncompliant forms; and (5) take any other action that shall be deemed necessary to bring the State of Washington into compliance with HAVA's voter database requirements.
¶ 8 The Secretary of State scheduled the matter for a brief adjudicative proceeding under WAC 434-263-050(1)(e). After each party presented written argument and exhibits, an administrative law judge (ALJ) conducted oral argument by telephone conference. The ALJ issued an initial decision, entered findings of fact and conclusions of law, and dismissed the complaint.
¶ 9 Edelman requested an administrative review of the ALJ's initial decision. The Secretary of State designated Director of Elections Nixon Handy as the reviewing officer under WAC 434-263-070.[4] The reviewing officer issued a final determination, granting in part and denying in part the requested relief.[5]
¶ 10 The reviewing officer adopted the findings of fact and conclusions of law in the ALJ's initial decision, with two modifications.[6] First, the reviewing officer concluded, "as a matter of policy, not legal requirement," that there was merit to modifying the voter registration form to include the statement in 42 U.S.C. § 15483(b)(4)(A)(iii). AR at 1102. The reviewing officer instructed the staff of the elections division of the Secretary of State's office to consider the matter and provide him with written analysis and recommendations for modifying the form.
¶ 11 In the second modification of the ALJ's initial decision, the reviewing officer concluded that "practices and procedures designed to both minimize registration and voting by ineligible voters and to maximize registration and voting by eligible voters could be improved by developing carefully written practices and procedures." AR at 1102. The reviewing officer directed the staff of the elections division to develop written practices and procedures for use in screening voter registrations, checking for and removing underage voters from the registration list, and communicating with county auditors and prosecutors regarding potential or actual underage voting by January 5, 2009.
¶ 12 Edelman filed a petition for judicial review in Thurston County Superior Court under the APA. After additional briefing and argument by counsel, the superior court affirmed the reviewing officer's final determination and ordered the parties to bear their own costs and fees. Edelman appeals.

ANALYSIS
¶ 13 Edelman contends that the final determination erroneously interpreted and applied the law and that the order is not supported by substantial evidence when viewed in light of the whole record. Thus, he argues that the order only violates RCW 34.05.570(3)(d) and (e).[7]

*586 I. Standard of Review
¶ 14 The Washington APA, RCW 34.05.510 through RCW 34.05.598, governs our review of an agency's final order. Heidgerken v. Dep't of Natural Res., 99 Wash. App. 380, 384, 993 P.2d 934 (2000). "We `look to the administrative record, and not the superior court findings or conclusions, when conducting review.'" Heidgerken, 99 Wash.App. at 384, 993 P.2d 934 (quoting Waste Mgmt. of Seattle v. Util. & Transp. Comm'n, 123 Wash.2d 621, 633, 869 P.2d 1034 (1994)); see also Tapper v. Emp't Sec. Dep't, 122 Wash.2d 397, 406, 858 P.2d 494 (1993) (it is the reviewing officer's findings of fact, to the extent they modify or replace the findings of the ALJ, which are relevant on appeal).
¶ 15 The party asserting the invalidity of the agency's action bears the burden of demonstrating that invalidity. RCW 34.05.570(1)(a); Heidgerken, 99 Wash.App. at 384, 993 P.2d 934. "We apply a substantial evidence standard to the agency's findings of fact but review de novo its conclusions of law." Heidgerken, 99 Wash.App. at 384, 993 P.2d 934. We treat unchallenged findings of fact as verities on appeal. Heidgerken, 99 Wash.App. at 384, 993 P.2d 934. Under the APA, we grant relief from an agency's order arising from an adjudicative proceeding only if we determine that one or more of the statutory bases for relief enumerated in RCW 34.05.570(3) are established. Heidgerken, 99 Wash.App. at 384, 993 P.2d 934; see RCW 34.05.570(3)(a) through (i) (listing nine bases for relief).
¶ 16 "`Substantial evidence' is `evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" Heinmiller v. Dep't of Health, 127 Wash.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995) (internal quotation marks omitted) (quoting Thieu Lenh Nghiem v. State, 73 Wash.App. 405, 412, 869 P.2d 1086 (1994)); see Callecod v. Wash. State Patrol, 84 Wash.App. 663, 676 n. 9, 929 P.2d 510 (1997) (findings of fact are reviewed to determine whether substantial evidence supports them; "review is deferential and entails acceptance of fact finder's views regarding credibility of witnesses and weight to be given reasonable but competing inferences").

II. Overview of HAVA
¶ 17 Congress enacted HAVA in reaction to the 2000 presidential election and the ensuing controversial Florida recount. Gonzalez v. Arizona, 624 F.3d 1162, 1184 (9th Cir.2010).[8] The Supreme Court provided a brief overview of HAVA in Crawford v. Marion Cnty. Election Bd., 553 U.S. 181, 192-93, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (plurality opinion),[9] stating:

*587 In HAVA, Congress required every State to create and maintain a computerized statewide list of all registered voters. 42 U.S.C. § 15483(a) (2000 ed., Supp. V). HAVA also requires the States to verify voter information contained in a voter registration application and specifies either an "applicant's driver's license number" or "the last 4 digits of the applicant's social security number" as acceptable verifications. § 15483(a)(5)(A)(i). If an individual has neither number, the State is required to assign the applicant a voter identification number. § 15483(a)(5)(A)(ii).
HAVA also imposes new identification requirements for individuals registering to vote for the first time who submit their applications by mail. If the voter is casting his ballot in person, he must present local election officials with written identification, which may be either "a current and valid photo identification" or another form of documentation such as a bank statement or paycheck. § 15483(b)(2)(A). If the voter is voting by mail, he must include a copy of the identification with his ballot. A voter may also include a copy of the documentation with his application or provide his driver's license number or Social Security number for verification. § 15483(b)(3). Finally, in a provision entitled "Fail-safe voting," HAVA authorizes the casting of provisional ballots by challenged voters. § 15483(b)(2)(B).
Crawford, 553 U.S. at 192-93, 128 S.Ct. 1610.
¶ 18 "The statute was passed in large part to ensure that eligible voters would not be left off the voting rosters or turned away from the polls." Washington Ass'n of Churches v. Reed, 492 F.Supp.2d 1264, 1268 (W.D.Wash.2006). "HAVA seeks to ensure that voting and election administration systems will `be the most convenient, accessible, and easy to use for voters' and `will be nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and have that vote counted.'" Washington Ass'n of Churches, 492 F.Supp.2d at 1268 (quoting 42 U.S.C. § 15381(a)(1), (3)). Accordingly, HAVA "requires the states to create reliable registration rolls by implementing a uniform, regularly updated computerized statewide voter registration list." Wash. Ass'n of Churches, 492 F.Supp.2d at 1268 (citing 42 U.S.C. § 15483(a)). The present case primarily involves issues related to the statewide voter registration list.

III. Pending Underage Voter Registration Applications
¶ 19 Edelman argues that the county auditors' practice of "pending" voter registration applications by underage applicants, approved by the Secretary of State, violates HAVA in two ways. First, Edelman contends that by not rejecting the applications of underage applicants, election officials violate HAVA's requirement to maintain an accurate statewide voter registration list. Second, Edelman argues that the practice of pending underage registration applications violates HAVA's requirement to process registrations expeditiously. We address each argument in turn.

A. HAVA's Maintenance Requirements
¶ 20 Edelman contends that the practice of pending underage registration applications violates the maintenance requirements of 42 U.S.C. § 15483. We disagree.
¶ 21 HAVA states in relevant part that each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State.
42 U.S.C. § 15483(a)(1)(A) (emphasis added). The text of § 15483 makes clear that only legally registered voters are to be included in the official computerized list.[10]
*588 ¶ 22 The statute also provides that "[t]he appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 42 U.S.C. § 15483(a)(2)(A). Then the statute states that "[t]he list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that ... the name of each registered voter appears in the computerized list" and that "only voters who are not registered or who are not eligible to vote are removed from the computerized list." 42 U.S.C. § 15483(a)(2)(B)(i), (ii).
¶ 23 The statute then designates a minimum accuracy standard for state voter registration records:
The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including the following:
(A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C.1973gg et seq.), registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.
(B) Safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.
42 U.S.C. § 15483(a)(4) (emphasis added). The dual foci of HAVA's maintenance and accuracy requirements are the inclusion of all eligible voters on the statewide voter registration list and the regular review and removal of any ineligible registrations that appear on the list.
¶ 24 Edelman argues that "HAVA expressly requires the Secretary of State to maintain `accurate' voter registration records. 42 U.S.C. § 15483(a)(4). There is no authority for adding ineligible voters to this list." Br. of Appellant at 16. But the practice of pending applications does not add ineligible voters to the statewide list. As Edelman acknowledges in his brief, when county auditors receive registration applications from applicants who will not turn 18 before the next election, "[t]he auditor will pend the underage application by either physically placing the registration in a drawer, or adding the applicant to [the] local election management system under a pending status." Br. of Appellant at 15 (emphasis added). Thus, the practice of pending or holding underage applications locally, and not submitting the applications for inclusion in the statewide list of eligible voters until such time as the applicants will be 18 by the next election, preserves the accuracy of the statewide list of eligible voters. Under these circumstances the ALJ correctly concluded that the practice of pending underage applications does not violate HAVA,[11] and we so hold.

*589 B. HAVA's Expeditious Entry Requirement
¶ 25 Edelman also contends that the practice of pending underage registration applications violates 42 U.S.C. § 15483(a)(1)(A)(vi). Again, we disagree.
¶ 26 The provision in question states, "All voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official." 42 U.S.C. § 15483(a)(1)(A)(vi). The ALJ rejected Edelman's argument that pending underage registrations ran afoul of this subsection, stating:
I reject the Complainant's argument, because HAVA only requires registration of applicants who are eligible and who submit complete applications. Indeed, it clearly does not require processing of incomplete forms, but instead requires that the applicant be given the opportunity to complete the form in a timely manner. 42 U.S.C. § 15483(b)(4)(B). It would be an absurd reading of the statute to require an expedited processing of an application from an ineligible applicant, where the application on its face shows that the applicant will become eligible through the mere passage of time.
AR at 957.
¶ 27 In isolation, the plain language of § 15483(a)(1)(A)(vi) appears to mandate immediate entry into the statewide list of information from a submitted underage application. But § 15483(a)(1)(A)(vi) lies within the subsection directing the implementation of "a single ... statewide voter registration list... that contains the name and registration information of every legally registered voter in the State." 42 U.S.C. § 15483(a)(1)(A) (emphasis added). Throughout this subsection, both before and after § 15483(a)(1)(A)(vi), the statewide list is characterized as containing only legally eligible voters. See 42 U.S.C. § 15483(a)(1)(A)(i), (ii), (viii) (quoted in note 11). Thus, read in context, it appears that § 15483(a)(1)(A)(vi) requires expedited entry of registration information on the statewide list for eligible voters.
¶ 28 Edelman additionally contends that State law grants officials the authority to delay processing voter registrations only if an application is incomplete. He cites RCW 29A.08.110 as support, but that statute expressly provides, "The applicant shall not be placed on the official list of registered voters until the application is complete." RCW 29A.08.110(2). As noted, a "`[p]ending status' means a voter registration record is not yet complete, and the applicant is not yet a registered voter." WAC 434-324-005(10). Accordingly, RCW 29A.08.110 does not advance Edelman's argument.[12]
¶ 29 Edelman also contends that, like HAVA, state law mandates the rejection of registration forms submitted by ineligible applicants. He cites RCW 29A.08.330(3) and RCW 46.20.155(1) as support for his argument. Both statutes address verbal questioning by agency personnel and when a registration form should be provided, which is not the circumstance here. But more to the point, Edelman did not mention these statutes to the ALJ or the reviewing officer. On judicial review of administrative action, issues not raised before the agency may not be raised on appeal. RCW 34.05.554(1); Alpha Kappa Lambda Fraternity v. Wash. State Univ., 152 Wash.App. 401, 420, 216 P.3d 451 (2009). We do not address this contention further.

C. Findings
¶ 30 Edelman also contends that substantial evidence does not support the ALJ's findings. We disagree. In part, the ALJ determined in her initial decision:

*590 I find that the evidence does not support a finding that the Secretary of State has a policy or procedure that allows counties to register underage persons, resulting in underage voters. The procedures used by the counties is to not allow processing of applications of underage applicants, but instead to "pend" (defer action on) the applications. The fact that the database does not accurately reflect the date of registration, but instead the receipt date of the application, does not mean that the registration is actually happening prematurely. The fact that there were no actual underage votes in 2007, and only four in 2008, is strong evidence that the current policies are working to prevent underage registration and voting....
The evidence also shows that the Secretary of State is removing underage registrants from [the voter registration data base] as his office learns of them. This does not, as the Complainant contends, show that the current system is broken, but rather that it is working.
AR at 953-54. Edelman points to the exhibits he submitted to the ALJ, arguing that they show 16,085 underage registrations and 127 probable underage votes between January 2000 and February 2008. But Edelman admits that HAVA became effective in Washington on January 1, 2006, and thus, any evidence prior to that date is not relevant.
¶ 31 Moreover, the record contains the Secretary's explanation that the ostensible appearance of underage registrations on the statewide list is illusory, resulting from state law requirements that a voter registration application is considered registered on the day it was originally mailed or delivered. See RCW 29A.08.110(1). The ALJ's findings show that she was convinced by the Secretary's explanations and the election staff's declarations that are found in the record. That ends the substantial evidence inquiry. Callecod, 84 Wash.App. at 676 n. 9, 929 P.2d 510 (findings of fact are reviewed to determine whether substantial evidence supports them; review is deferential and entails acceptance of the agency fact finder's views regarding weight to be given reasonable but competing inferences).
¶ 32 Thus, we hold that Edelman has not shown that the practice of pending underage applications violates HAVA.

IV. Voter Registration Form
¶ 33 Edelman further contends that the Washington State Voter Registration Form omits a statement that is required by 42 U.S.C. § 15483(b)(4)(A)(iii). We disagree.[13] The relevant subsection of HAVA states:
(4) Contents of mail-in registration form
(A) In general
The mail voter registration form developed under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg-4) shall include the following:
(i) The question "Are you a citizen of the United States of America?" and boxes for the applicant to check to indicate whether the applicant is or is not a citizen of the United States.
(ii) The question "Will you be 18 years of age on or before election day?" and boxes for the applicant to check to indicate whether or not the applicant will be 18 years of age or older on election day.
(iii) The statement "If you checked `no' in response to either of these questions, do not complete this form."
(iv) A statement informing the individual that if the form is submitted by mail and the individual is registering for the first time, the appropriate information required under this section must be submitted with the mail-in registration form in order to avoid the additional identification requirements upon voting for the first time.
(B) Incomplete forms
If an applicant for voter registration fails to answer the question included on the mail voter registration form pursuant to subparagraph (A)(i), the registrar *591 shall notify the applicant of the failure and provide the applicant with an opportunity to complete the form in a timely manner to allow for the completion of the registration form prior to the next election for Federal office (subject to State law).
42 U.S.C. § 15483(b)(4) (boldface omitted). The form at issue before the ALJ included the questions and checkboxes as provided in § 15483(b)(4)(A)(i) and (ii), but not the statement in § 15483(b)(4)(A)(iii).[14] Edelman argues that under the statute's plain language, the form does not comply with HAVA.
¶ 34 HAVA also established the United States Election Assistance Commission (EAC). See 42 U.S.C. §§ 15321, 15322. The EAC provides voluntary guidance to assist states in meeting the HAVA requirements. 42 U.S.C. § 15501. In 2004, the EAC advised the states as follows:
HAVA requires that the federal mail-in registration form include check-off boxes for citizenship and being 18 years of age by Election Day. If neither the "yes" box nor the "no" box is checked, the State is required to notify the applicant of the incomplete form with sufficient time to allow completion of the form. This subsection is "subject to state law," so the state may choose to honor the affirmation of citizenship and age that goes with the signing of the registration form and register a person who did not check the "yes" box. (If a "no" box is checked, the application should be rejected.) HAVA does not require states to redesign their state voter registration forms to include check-off boxes.

AR at 455 (emphasis added). This remained the EAC's position at the time of the hearing on Edelman's complaint.
¶ 35 Relying on the EAC's advice, the ALJ determined:
The Complainant argues that the "subject to State law" language only relates to the section regarding providing the applicant the opportunity to complete an incomplete form in a timely manner. The placement of that language within subsection (B) appears to support the Complainant's position. Nevertheless, the Complainant's position is not the position of the [EAC]. According to advice from EAC, HAVA does not even require states to redesign their state voter registration forms to include the check-off boxes. As the federal agency charged with guidance regarding HAVA, it is appropriate to defer to the EAC's interpretation. I find the EAC's interpretation to be reasonable. If the "subject to State law" language applies to the part of 42 U.S.C. § 15483(b)(4)(A) relating to check-off boxes, it logically also applies to the other requirements of 42 U.S.C. § 15483(b)(4)(A). The Complainant does not argue that the Mail-in Voter Registration form violates Washington state law.
AR at 958 (quoting 42 U.S.C. § 15483(b)(4)(B)). Under the EAC's advisement, the declaration was sufficient. See Chevron, U.S.A. Inc. v. Nat'l Res. Def. Council Inc., 467 U.S. 837, 845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (where agency interpretation represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, courts should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned). We hold that the ALJ did not err by finding that the Washington *592 State Voter Registration Form did not violate HAVA.

V. Attorney Fees
¶ 36 Following RAP 18.1, Edelman has included a separate section in his brief arguing that he is entitled to attorney fees. He contends that he is entitled to fees under RCW 4.84.350, which states in relevant part:
Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.
RCW 4.84.350(1) (emphasis added). In affirming the reviewing officer's final determination, the superior court denied Edelman's attorney fee request, ordering the parties to bear their own costs and fees. We also affirm. Although it may be debatable whether Edelman actually prevailed in part on administrative review,[15] he has not prevailed in a judicial review. Accordingly, his request for fees under RCW 4.84.350(1) is denied. See Booker Auction Co. v. Dep't of Revenue, 158 Wash.App. 84, 241 P.3d 439, 442 (2010) (reviewing court need not reach unsuccessful appellant's request for attorney fees under RCW 4.84.350(1)).[16]
¶ 37 We affirm the reviewing officer's final determination and deny Edelman's request for attorney fees.
We concur: HUNT, J., and WORSWICK, A.C.J.
NOTES
[1] The Help America Vote Act of 2002, Pub.L. No. 107-252, 116 Stat. 1666 (codified at 42 U.S.C. §§ 15301 through 15545) was signed into law by President George W. Bush on October 29, 2002. Am. Ass'n of People with Disabilities v. Katherine Harris, 605 F.3d 1124, 1128 (11th Cir.2010).
[2] Purportedly, the county auditors do not accept voter registration applications from applicants younger than 17.
[3] "Pending status" is defined to mean that a voter registration record is not yet complete and that the applicant is not yet a registered voter. WAC 434-324-005(10). An earlier version of WAC 434-324-005 was in effect in 2008 when Edelman filed his complaint with the Secretary of State. See RCW 29A.04.611. Because these amendments do not impact the present analysis, we cite to the current version of WAC 434-324-005.
[4] In his request for administrative review, Edelman requested that the Secretary and his elections staff be disqualified, apparently based on an assumption of prejudice in favor of the existing procedures, and that a neutral officer be appointed to conduct the review. Edelman also filed a request to admit new evidence into the record, which he obtained through public records requests after the ALJ's initial decision issued.
[5] Before addressing the substance of the complaint, the final determination addressed the two preliminary matters. First, the reviewing officer denied Edelman's request that the reviewing officer disqualify himself. (Edelman abandoned that challenge on further appeal.) Second, the reviewing officer agreed that Edelman could supplement the record and admitted five new exhibits into evidence, "in the interest of creating a more complete record." AR 1097. The reviewing officer entered several findings of fact based on the additional exhibits, determining that the additional evidence did not contradict the ALJ's findings.
[6] Because the reviewing officer agreed with the ALJ's findings and conclusions and made advisory, not legal, modifications to the ALJ's order, we refer to the ALJ's findings and conclusions in this opinion.
[7] RCW 34.05.570(3) provides in relevant part, "The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that: ... (d) The agency has erroneously interpreted or applied the law; ... (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court."
[8] Gonzalez, in part, addressed the interplay between HAVA and another federal statute addressing election procedures, the National Voter Registration Act of 1993 (NVRA), 42 U.S.C. §§ 1973gg through 1973gg-10. See 624 F.3d at 1168-69, 1184. Gonzalez explained that "NVRA and HAVA operate in separate spheres: while the NVRA regulates voter registration, HAVA is concerned with updating election technologies and other election-day issues at polling places." 624 F.3d at 1184.
[9] The Supreme Court's discussion of HAVA in Crawford depicts HAVA's dual role of facilitating enfranchisement and ensuring that only eligible voters cast votes. Crawford's juxtaposition of HAVA with the NVRA when discussing election modernization demonstrates that HAVA may be seen as a measured response to the perceived consequences of the NVRA. Crawford stated as follows:

Two recently enacted federal statutes [NVRA and HAVA] have made it necessary for States to reexamine their election procedures. Both contain provisions consistent with a State's choice to use government-issued photo identification as a relevant source of information concerning a citizen's eligibility to vote.
In the National Voter Registration Act of 1993 (NVRA), 107 Stat. 77, 42 U.S.C. § 1973gg et seq., Congress established procedures that would both increase the number of registered voters and protect the integrity of the electoral process. § 1973gg. The statute requires state motor vehicle driver's license applications to serve as voter registration applications. § 1973gg-3. While that requirement has increased the number of registered voters, the statute also contains a provision restricting States' ability to remove names from the lists of registered voters. § 1973gg-6(a)(3). These protections have been partly responsible for inflated lists of registered voters. For example, evidence credited by Judge Barker estimated that as of 2004 Indiana's voter rolls were inflated by as much as 41.4%, see 458 F.Supp.2d, at 793, and data collected by the Election Assistance Committee in 2004 indicated that 19 of 92 Indiana counties had registration totals exceeding 100% of the 2004 voting-age population, Dept. of Justice Complaint in United States v. Indiana, No. 1:06-cv-1000-RLY-TAB (SD Ind., June 27, 2006), p. 4, App. 313.
553 U.S. at 192, 128 S.Ct. 1610. The Crawford Court then discussed HAVA as noted earlier in this opinion. See 553 U.S. at 192-93, 128 S.Ct. 1610.
[10] 42 U.S.C. § 15483(a)(1)(A) repeatedly indicates that only legally registered voters are to be included in the computerized list. "The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State." 42 U.S.C. § 15483(a)(1)(A)(i). "The computerized list contains the name and registration information of every legally registered voter in the State." 42 U.S.C. § 15483(a)(1)(A)(ii). "The computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 42 U.S.C. § 15483(a)(1)(A)(viii).
[11] The ALJ determined as follows:

I conclude that the Complainant has not shown a violation of HAVA with respect to allowing counties to accept registrations f[ro]m underage applicants, and then pend these for processing until the applicant will be 18 years old by the next election. There is no evidence that this procedure allows underage applicants to actually show up on the computerized database as registered voters. They should not appear on the database until after they have reached the required age. If, despite precautions put in place, some applicants slip through the cracks, there are processes to remove them from the database.
AR at 957.
Moreover, HAVA requires only that the Secretary of State make a reasonable effort to remove registrants who are ineligible to vote. It does not discuss steps to prevent erroneous registration of underage voters, other than the provisions of the Mail-In Registration Form, discussed below. There is no evidence that the Secretary of State is failing to make reasonable efforts to remove registrants who are ineligible to vote, or is failing in any duty with respect to list maintenance.
AR at 957. These conclusions were adopted in the final determination.
[12] RCW 29A.08.110 was reworded and reorganized by amendment in 2009. See Laws of 2009, ch. 369, § 10 (effective July 26, 2009). The former version of the statute similarly provided, "If [an application] is not complete ... the name of the applicant shall not be placed on the official list of registered voters." Former RCW 29A.080.110(1) (2005); Laws of 2005, ch. 246, § 5 (effective Jan. 1, 2006).
[13] This issue appears to be moot because the current voter registration form does include the § 15483(b)(4)(A)(iii) statement discussed herein. See WAC 434-324-026 (effective Feb. 18, 2010).
[14] The form also included a block for "Date of Birth" and the following "Voter Declaration" just above the signature box:

By signing this document, I hereby assert, under penalty of perjury, that I am legally eligible to vote. If I am found to have voted illegally, I may be prosecuted and/or fined for this illegal act. In addition, I hereby acknowledge that my name and last known address will be forwarded to the appropriate state and/or federal authorities if I am found to have voted illegally. (RCW 29A.08.210)
 I declare that the facts on this registration form are true;
 I am a citizen of the United States;
 am not presently denied my civil rights as a result of being convicted of a felony;
 I will have lived in Washington state at this address for thirty days immediately before the next election at which I vote;
 I will be at least eighteen years old when I vote.
(RCW 29A.08.230)
AR at 945.
[15] The reviewing officer granted a portion of Edelman's requested relief by directing elections staff to develop written practices and procedures regarding the handling of underage voter registration applications. The reviewing officer also directed staff to "fully consider" the pros and cons of revising the voter registration form to include the statement noted in 42 U.S.C. § 15483(b)(4)(A)(iii). AR at 1102. The reviewing officer made clear that he was so ordering "as a matter of policy, not legal requirement," and denied Edelman's other requested relief. AR at 1102.
[16] Even if Edelman prevailed on one of his issues in this court, the Secretary's actions were "substantially justified" and thus, Edelman is not entitled to fees under RCW 4.84.350(1). The practice of pending underage voter registrations is not expressly prohibited by HAVA, and such practice comports with state policy "to encourage every eligible person to register to vote and to participate fully in all elections." RCW 29A.04.205. Also, the omission of the 42 U.S.C. § 15483(b)(4)(A)(iii) statement from the voter registration form was based on EAC advisement. Under these circumstances, the Secretary's actions had a "reasonable basis in law and fact" and thus, were substantially justified. Constr. Industry Training Council v. Wash. State Apprenticeship & Training Council, 96 Wash.App. 59, 68-69, 977 P.2d 655 (1999) (reversing attorney fee award under RCW 4.84.350 where agency's conduct was "substantially justified").